**BRIGGS, INC., Plaintiff, Appellant,**

v.

**MARTLET IMPORTING CO., INC., Defendant, Appellee.**

**No. 95–1017.**

United States Court of Appeals, First Circuit.

Heard May 3, 1995.

Decided June 14, 1995.

Joel A. Dearborn with whom Laurie Anne Miller was on brief, for appellant.

David R. Cross with whom James Brennan and John W. McCarthy were on brief, for appellee.

Before BOUDIN, Circuit Judge, COFFIN, Senior Circuit Judge, and STAHL, Circuit Judge.

COFFIN, Senior Circuit Judge.

This is a removed diversity action in which appellant, Briggs, Inc., a Maine wholesale beer distributor, sued Martlet Importing Co., a subsidiary of Molson Breweries U.S.A., seeking injunctive relief and monetary damages. Briggs claims that Martlet wrongfully gave another company exclusive rights to distribute a new malt beverage, Molson Ice, in the "Bangor Market," where Briggs had the exclusive distribution rights for all other Molson products. The magistrate judge hearing the case granted summary judgment for Martlet. We affirm.

In 1975, Martlet designated Briggs as its distributor in the Bangor area for two of its products, Molson Ale and Molson Beer, and later added a third, Molson Golden. There was no written instrument other than the designation of area distributors and products which Molson filed with the Maine Bureau of Alcoholic Beverages. The contract between Briggs and Martlet was oral and, under existing Maine law, terminable-at-will.

In 1979, the Certificate of Approval Holder and Maine Wholesale Licensee Agreement Act (the Act), Me.Rev.Stat.Ann. tit. 28–A, §§ 1451–1465, was enacted. This legislation gave protection to local wholesale distributors from termination by their suppliers ("certificate of approval holders"); not only was reasonable notice required, section 1455, but "good cause" was made a prerequisite, section 1454. After passage of the Act, Martlet designated Briggs its distributor for four more malt beverage items, Molson Light, Molson Brador, Molson Exel, and Molson Special Dry. Then in 1993, Martlet gave the distributorship for a new product, Molson Ice, to another distributor serving the same area.

The magistrate judge conducted a hearing in connection with a requested temporary restraining order, received depositions and affidavits, and finally granted summary judgment for Martlet. The court based its decision on the contract clauses of the U.S. Constitution, Art. I, § 10, cl. 1, and of the Maine Declaration of Rights, Art. I, § 11, holding that to apply the Act retroactively to the earlier oral agreement between Martlet and Briggs would substantially impair Martlet's understanding that it could terminate at will. It also held that no sufficient public purpose would be served. Finally, it held that there was no breach of good faith and fair dealing, as alleged in an amended complaint.

█ We do not reach the contract clauses issue, preferring to dispose of this case on the non-constitutional ground that, whether or not the Act has retroactive application, Martlet was not obligated under it to assign the distributorship of its new Molson Ice to Briggs. This is so because that beverage was a new and separate "brand" within the

meaning of the Act, and thus properly was the subject of an independent distribution agreement. Briggs argues that the Act bars Martlet from assigning Molson Ice to another distributor because this constitutes a dual distributorship, in violation of section 1453.[1] This conclusion follows from Briggs' theory that all Molson products comprise a single "brand." *See* App. at 349 (Testimony of Allison Briggs, chairman of the board, that: "Molson is the brand and Ice is an extension of the Molson's brand."). Because the Act does not permit a manufacturer to use multiple distributors for a single brand, Briggs concludes that it must serve as distributor for all Molson products.

■ In support of its conclusion, Briggs argues that the Act does not define "brand" or "label" and that these terms should be given their ordinary definition. As it happens, however, there seems to be no single, all purpose definition. Indeed, Briggs cites a *Dictionary of Marketing Terms* by Peter D. Bennett to the effect that "A brand may identify one item, a family of items, or all items of [a] seller." While such a multiplicity of possible meanings might in other circumstances preclude summary judgment, we are not dealing here with a word *in vacuo* but with its specific use in a statute that has for many years been interpreted adversely to Briggs' view.

The statutory language strongly suggests the more limited "one item" meaning of brand. Section 1451 (and also section 1452(1)(C)) speaks of an agreement between a certificate of approval holder and a wholesale licensee authorizing the latter "to distribute one or more of the certificate of approval holder's *brands* of malt liquor." (Emphasis added.) The assumption appears to be that a certificate holder has multiple "brands," or "kinds," of wine or beer. Section 1453(1) then prohibits dual distributorships for individual brands or labels, using the singular forms of those words.[2] We think it apparent, in light of the earlier use of the plural "brands," that the prohibition in this section concerns discrete products of a manufacturer, and does not bar multiple distribution agreements for differently labelled products of a single manufacturer. Likewise, the obligation to maintain agreements in the absence of good cause for changing or terminating them must apply only to the distribution rights of the individual "brands."

If the statutory language leaves any doubt concerning this interpretation, it is dispelled by the testimony of Lynn Cayford, Director of Licensing for the Bureau of Liquor Enforcement of the State of Maine for the past thirteen years. He testified that the agency treated "every label as a separate brand," and that this definition of "how we handle brands and how we handle labels is the same way we've handled them in my twelve years or thirteen years working there."

Briggs urges us to give no deference to the agency's interpretation because of the lack of a definition in the Act, the absence of case law, and the fact that Cayford is not an attorney. This is an original, if meritless, argument. As the Maine Supreme Judicial Court has made clear, "We shall accept the agency's construction, especially if, as here, it is long established . . . unless it clearly violates the legislative intent." *Bar Harbor Banking and Trust Co. v. Superintendent of*

---

1. The magistrate judge found it unnecessary to decide whether the original agreement between Briggs and Martlet encompassed all Molson products to be distributed in the Bangor market or whether separate agreements were made as each new product was introduced. Although Briggs' chairman of the board testified that the 1975 agreement obligated Martlet to designate Briggs as its distributor for all new Molson products, Briggs' brief on appeal does not contain this contention. We note, in addition, that Briggs' complaint does not contain a breach of contract count.

These omissions are entirely understandable. The only evidence offered to support a compre-

hensive contract is the fact that Martlet originally assigned some distribution rights to Briggs. *See* App. at 346–47, 349–50. The idea that a terminable-at-will contract for individual products could imply an enforceable obligation to grant future distributorships, to say the least, does not carry conviction.

2. The provision reads as follows: "No certificate of approval holder who designates a sales territory for which a wholesale licensee is primarily responsible may enter into any agreement with any other wholesale licensee for the purpose of establishing an additional agreement for its brand or label in the same territory."

*the Bureau of Consumer Protection*, 471 A.2d 292, 296 (Me.1984).

The conclusory assertions of Briggs' officers that "brand" and "label" refer in this context to all products using a supplier's name do not create a genuine issue of material fact. There was no violation of the Act, or, *a fortiori*, of any obligation of good faith and fair dealing, in Martlet's refusal to give Briggs the distributorship of its new brand, Molson Ice.

*Affirmed.*