POOR RICHARD'S, INC. D/B/A POOR RICHARD'S v. HERMAN STONE, POLICE CHIEF CHAPEL HILL, NORTH CAROLINA AND LINDY PENDERGRASS, SHERIFF ORANGE COUNTY, NORTH CAROLINA

No. 397A87

(Filed 6 April 1988)

1. **Constitutional Law § 12.1— regulation of businesses dealing in military goods—due process**

     Provisions of Art. 1 of G.S. Ch. 127B which require businesses dealing in military goods to obtain a license, post a $1,000 bond, provide certain information about the owners, and maintain certain records relating to their transactions involving military property do not unreasonably obstruct plaintiff's fundamental right to earn a livelihood in violation of Art I, §§ 1 and 19 of the N.C. Constitution since the nature of the property involved distinguishes plaintiff's business from other retail facilities so as to justify its regulation, and the means used are not unduly burdensome on the regulated businesses. Nor does the statute violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution since it bears a rational relation to a legitimate state objective.

2. **Constitutional Law § 12.1— regulation of businesses dealing in military goods—equal protection**

     The statute regulating businesses dealing in military goods, Art. 1 of G.S. Ch. 127B, is reasonably grounded on the inherent difference between military

property and goods ordinarily sold to civilians so that it does not create an impermissible classification in violation of the equal protection provisions of the state or federal constitutions.

APPEAL by the state pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 86 N.C. App. 137, 356 S.E. 2d 828 (1987), affirming order of *Battle, J.*, permanently enjoining defendants from enforcing Article 1, Chapter 127B of the North Carolina General Statutes. Heard in the Supreme Court 8 December 1987.

*Lacy Thornburg, Attorney General, by Norma S. Harrell, Assistant Attorney General, for the state.*

*Poyner & Spruill, by J. Phil Carlton and Susanne F. Hayes, for plaintiff-appellee.*

EXUM, Chief Justice.

The issue presented on appeal is whether Article 1, Chapter 127B, regulating businesses dealing in military goods, is unconstitutional under the due process and equal protection provisions of the state and federal constitutions. Concluding that it was unconstitutional, the trial court granted summary judgment for plaintiff and permanently enjoined enforcement of the statute. The Court of Appeals affirmed. We now conclude the statute is constitutional and reverse.

On 1 July 1985 the North Carolina General Assembly enacted Chapter 522 of the 1985 Session Laws, codified as Chapter 127B of the General Statutes. Article 1 of Chapter 127B (hereinafter "the statute") creates a scheme of regulation over any person or business involved in the purchasing or selling of "military property." Section 1 of the statute denominates such persons or businesses as "military property sales facilities" (hereinafter "sales facilities") and section 2 defines "military property" as "property originally manufactured for the United States or State of North Carolina which is . . . use[d] in, or furnished and intended for, the military service of the United States or the militia of the State of North Carolina."

Section 3 of the statute provides that all sales facilities must obtain a license from the appropriate local government. Generally, all licensees must: (1) furnish the governing body with certain

personal information about the principals in the business; (2) post a one thousand dollar bond, payable to the state, to insure "the faithful performance of the requirements and obligations pertaining to the business licensed . . ."; and, (3) maintain certain records regarding acquisitions of military property, which must be kept open for inspection by law enforcement officers. Violation of the statute constitutes a misdemeanor.

The statute became effective on 1 October 1985. On 23 October 1985 plaintiff, a North Carolina corporation engaged in the business of retail sales, including sales of military property, filed this declaratory judgment action challenging the constitutionality of the statute under both the state and federal constitutions. Plaintiff's complaint also contained a motion for an order temporarily restraining enforcement of the statute. The trial court immediately granted this motion. The temporary restraining order was later converted to a preliminary injunction by consent of the parties.

On 7 March 1986 plaintiff moved for summary judgment and submitted affidavits from four different owners of retail stores which buy and sell military property. Each of the affidavits stated that compliance with the statute would cause them substantial and irreparable economic loss. Plaintiff and one other affiant stated that compliance would force them to abandon the part of their business dealing with military property.

On 17 March 1986 the trial court granted plaintiff's motion for summary judgment and permanently enjoined defendants from enforcing the statute. By consent of the parties and approval of the trial court the state was made a party defendant to the action and judgment was made to apply to all law enforcement agencies in the state. The state, as intervenor-defendant, appealed to the Court of Appeals. In an opinion filed 16 June 1987 the Court of Appeals, with Johnson, J. dissenting, affirmed the superior court's order, holding that the statute violated Article I, Sections 1 and 19 of the North Carolina Constitution. The state appeals from that decision.

It is well settled that an act passed by the legislature is presumed to be constitutional. *Roller v. Allen*, 245 N.C. 516, 96 S.E. 2d 851 (1975); *Ramsey v. North Carolina Veterans Commission*, 261 N.C. 645, 135 S.E. 2d 659 (1964). The legislature deter-

mines, within reasonable limits, what the public welfare requires; and the wisdom of its enactments is not the concern of the courts. *State v. Warren,* 252 N.C. 690, 696, 114 S.E. 2d 660, 666 (1960). "[W]hether an act is good or bad law, wise or unwise, is a question for the Legislature and not for the courts . . . ." *Id.*

[1] Plaintiff first contends the statute violates Article I, Sections 1 and 19 of the North Carolina Constitution in that it unreasonably obstructs plaintiff's fundamental right to earn a livelihood.

Article I, Section 1 of the North Carolina Constitution provides that "life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness" are among those rights of the people that are inalienable. Section 19 of the same Article provides that "[n]o person shall be . . . deprived of his . . . liberty, or property, but by the law of the land." The "law of the land," like "due process of law," serves to limit the state's police power to actions which have a real or substantial relation to the public health, morals, order, safety or general welfare. *A-S-P Associates v. City of Raleigh,* 298 N.C. 207, 258 S.E. 2d 444 (1979).

These constitutional protections have been consistently interpreted to permit the state, through the exercise of its police power, to regulate economic enterprises provided the regulation is rationally related to a proper governmental purpose. This is the test used in determining the validity of state regulation of business under both Article I, Section 1, and Article I, Section 19. *Treants Enterprises v. Onslow County,* 320 N.C. 776, 360 S.E. 2d 783 (1987). Inquiry is thus twofold: (1) is there a proper governmental purpose for the statute, and (2) are the means chosen to effect that purpose reasonable?

Considering the first prong of the test, we note that the state offers two possible justifications for the legislation: to stem the tide of thefts on military bases and the related purpose of limiting the opportunities for thieves to dispose of stolen goods. We are cognizant of the principle that the state may not undertake "by regulation to rid ordinary occupations and callings of the dishonest and morally decadent. Resort in that area must be had to the criminal laws." *State v. Warren,* 252 N.C. at 693, 114 S.E. 2d at 664. If the principle were otherwise, the state could regulate *any* business under the pretense of protecting the public

from potential dishonesty within the business or occupation. Otherwise lawful occupations may, however, be regulated when there is some "distinguishing feature in the business itself or in the manner in which it is ordinarily conducted, the . . . probable consequence of which, if unregulated, is to produce substantial injury to the public peace, health, or welfare." *State v. Harris*, 216 N.C. 746, 758-59, 6 S.E. 2d 854, 863 (1940).

In the past we have upheld regulatory business legislation so long as it was based on some distinguishing feature of the business itself which provided a rational basis for it and was, therefore, not irrational or arbitrary. *See, e.g., Smith v. Keator*, 285 N.C. 530, 206 S.E. 2d 203 (1974) (massage parlors); *State v. Greenwood*, 12 N.C. App. 584, 184 S.E. 2d 386 (1971), *rev'd on other grounds*, 280 N.C. 651, 187 S.E. 2d 8 (1972) (billiard halls); *Motley v. State Board of Barber Examiners*, 228 N.C. 337, 45 S.E. 2d 550 (1947) (barbers). On the other hand, we have not hesitated to strike down business regulation on grounds of arbitrariness when no distinguishing feature of the business rationally related to the regulation could be discerned. *See, e.g., Roller v. Allen*, 245 N.C. 516, 96 S.E. 2d 851 (1957) (ceramic tile contractors); *State v. Ballance*, 229 N.C. 764, 51 S.E. 2d 731 (1949) (photographers); *State v. Harris*, 216 N.C. 746, 6 S.E. 2d 854 (1940) (cleaners and pressers).

The question here is whether that portion of plaintiff's business which involves the buying and selling of military property has some feature which distinguishes it from other types of retail sales in a way which justifies its regulation.

We think it does. By definition, military property is originally manufactured for the state or federal government for use by their military services. It is neither manufactured for, nor intended for use by, civilian consumers. The question that immediately arises is how do goods manufactured solely for use by the military find their way into retail outlets and become readily available to civilian consumers? Inherent in this question is still another — have any unauthorized transfers of these goods taken place? These questions are peculiar to the sale of military property; and need for answers to these unique questions provides the constitutionally required rational basis for the legislation under attack.

The state is not required to come forward with evidence that military property in civilian retail outlets has been transferred without authorization at some point in the chain of distribution.

> If the constitutionality of a statute . . . depends on the existence or nonexistence of certain facts and circumstances, the existence of such facts and circumstances will generally be presumed for the purpose of giving validity to the statute, . . . if such a state of facts can reasonably be presumed to exist, and if any such facts may be reasonably conceived in the mind of the court. This rule does not apply if the evidence is to the contrary, or if facts judicially known or proved, compel otherwise.

*Martin v. North Carolina Housing Corporation,* 277 N.C. 29, 175 S.E. 2d 665 (1970) (*quoting* 16 C.J.S. Constitutional Law § 100b, pp. 454-455); *United States v. Carolene Products Co.,* 304 U.S. 144, 82 L.Ed. 1234 (1937).

The second inquiry is whether the means chosen to effect the proper governmental purpose are reasonable. This becomes a question of degree. The means used must be measured by balancing the public good likely to result from their utilization against the burdens resulting to the businesses being regulated. *In re Hospital,* 282 N.C. 542, 193 S.E. 2d 729 (1973). Here, the statute employs a commonly used licensing scheme which requires the licensees to furnish certain information about the principals in the business, to maintain certain records relating to its transactions involving military property and to execute a bond. While these requirements are not without their burdens for the sales facilities, we conclude that their tendency to help detect and protect the public from the consequences of unauthorized transfers of military property is constitutionally sufficient to justify them. Further, the statute does not seek to regulate all aspects of a sales facility. It regulates only those transactions which involve military property. We conclude, therefore, that the provisions of the statute are not unreasonably burdensome within the meaning of Article I, Sections 1 and 19 of the North Carolina Constitution.

Plaintiff next contends that the statute violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

In considering a due process claim under the federal constitution, the United States Supreme Court has stated that the Due Process Clause is no longer available to strike down regulatory laws because they may be unwise or out of harmony with a particular school of thought. *Williamson v. Lee Optical Co.*, 348 U.S. 483, 99 L.Ed. 5643, *reh'g denied*, 349 U.S. 925, 99 L.Ed. 1256 (1955). The Court refuses to sit as a "superlegislature to weigh the wisdom of legislation . . . ." *Day-Brite Lighting, Inc. v. Missouri*, 342 U.S. 421, 423, 96 L.Ed. 469, 472, *reh'g denied*, 343 U.S. 921, 96 L.Ed. 1334 (1952). All that is required under federal due process is that the state measure bear a rational relation to a constitutionally permissible objective. *Ferguson v. Skrupa*, 372 U.S. 726, 10 L.Ed. 2d 93 (1963). For the reasons we have already given in our state constitutional analysis, we conclude that the statute bears a rational relation to a legitimate state objective; therefore it does not contravene the Due Process Clause of the Fourteenth Amendment.

[2] Plaintiff next argues that, because the retail sale of military property is an ordinary occupation requiring no more skill or education than other businesses, the statute creates a constitutionally impermissible classification and is violative of equal protection under the North Carolina Constitution.

Statutes are void as class legislation when persons who are engaged in the same business are subject to different restrictions or are treated differently under the same conditions. *Cheek v. City of Charlotte*, 273 N.C. 293, 160 S.E. 2d 18 (1968). However, a legislative classification is not prohibited per se. *Id.* Its validity depends upon its being reasonably related to a proper object of the legislation. Classifications are not offensive to the Constitution "when the classification is based on a reasonable distinction and the law is made to apply uniformly to all the members of the class affected." *Id.*

Classification is permitted when (1) it is based on differences between the business to be regulated and other businesses and (2) when these differences are rationally related to the purpose of the legislation. *State v. Harris*, 216 N.C. 746, 6 S.E. 2d 854. As we have already demonstrated, the distinguishing feature of plaintiff's business and other sales facilities is the nature of the property sold. Therefore, we conclude that the classification

created by the statute is not so arbitrary or unreasonable as to be violative of the equal protection requirement.

Plaintiff also argues that the statute violates the Equal Protection Clause of the Fourteenth Amendment. The United States Supreme Court has consistently recognized that the Equal Protection Clause does not deny states the power to create classifications. It mandates only that the classification be reasonable and rest upon some ground of difference having a fair and substantial relation to the object of the legislation. *Dunn v. Blumstein,* 405 U.S. 330, 31 L.Ed. 2d 274 (1972); *McLaughlin v. Florida,* 379 U.S. 184, 13 L.Ed. 2d 222 (1964); *Royster Guano Co. v. Virginia,* 253 U.S. 412, 64 L.Ed. 989 (1920). We conclude that the classification here is reasonably grounded on the inherent difference between military property and goods ordinarily sold to civilian consumers.

Plaintiff in its brief also calls to our attention the constitutional prohibitions against unlawful searches and seizures, excessive bail, cruel and unusual punishment and unlawful monopoly without demonstrating either by argument or authority how the statute implicates these provisions. Plaintiff also makes the bare assertion that the statute violates the Commerce Clause of the federal constitution. Again plaintiff makes no argument and provides us with no authority to support this assertion. These arguments are, therefore, deemed abandoned. N.C.R. App. P. 28(b)(5); *State v. West,* 317 N.C. 219, 345 S.E. 2d 186 (1986).

For the foregoing reasons we find no constitutional infirmity in the statute. The decision of the Court of Appeals to the contrary, affirming the decision of the trial court, must, therefore, be

Reversed.