MARK IV BEVERAGE, INC., Plaintiff v. MOLSON BREWERIES USA, INC., MILLER BREWING COMPANY, MARTLET IMPORTING COMPANY, and I. H. CAFFEY DISTRIBUTING COMPANY, INCORPORATED, Defendants

No. COA97-470

(Filed 19 May 1998)

**1. Intoxicating Liquor § 80 (NCI4th)— Beer Franchise Law— wholesaler—injunction against competing wholesaler**

The Beer Franchise Law does not limit a wholesaler "whose franchise agreement is altered, terminated or not renewed" to injunctive relief against a supplier but permits the wholesaler to seek injunctive relief against a competing wholesaler. N.C.G.S. § 18B-1306.

**2. Appeal and Error § 340 (NCI4th)— assignment of error— conclusion of law violation—sufficiency of claim not presented**

Defendant's assignment of error to the trial court's conclusion that defendant violated the Beer Franchise Law did not preserve for review the question of whether plaintiff's complaint stated a claim against defendant.

**3. Intoxicating Liquor § 79 (NCI4th)— Beer Franchise Law— meaning of "brand"**

The term "brand" as used in the Beer Franchise Law denotes a common identifying trade name, such as Molson, rather than a specific malt beverage product, such as Molson Ice.

**4. Intoxicating Liquor § 79 (NCI4th)— Beer Franchise Law— no constitutional violation**

When construed so that "brand" means a family of malt beverages, the Beer Franchise Law does not unreasonably interfere

**MARK IV BEVERAGE, INC. v. MOLSON BREWERIES USA**

[129 N.C. App. 476 (1998)]

with the rights of suppliers to freely contract with wholesalers in violation of the Due Process Clause of the U.S. Constitution or the Law of the Land Clause of the N.C. Constitution. U.S. Const. amend XIV; N.C. Const. art. I, § 19.

Appeal by defendants from judgment entered 12 November 1996 by Judge Melzer A. Morgan, Jr. in Rockingham County Superior Court. Heard in the Court of Appeals 8 January 1998.

*Adams, Kleemeier, Hagan, Hannah & Fouts, A Professional Limited Liability Company, by W. Winburne King, III, Peter G. Pappas and David S. Pokela, for plaintiff-appellee Mark IV Beverage, Inc.*

*Smith, Helms, Mulliss & Moore, L.L.P., by Larry B. Sitton, James B. Exum, Jr. and William E. Burton, III, for defendants-appellants Molson Breweries USA, Inc., Miller Brewing Company and Martlet Importing Company.*

*Robinson & Lawing, L.L.P., by Kevin L. Miller, for defendant-appellant I. H. Caffey Distributing Company, Inc.*

*Tharrington Smith, L.L.P., by Michael Crowell and E. Hardy Lewis, for The North Carolina Beer and Wine Wholesalers Association, amicus curiae.*

TIMMONS-GOODSON, Judge.

Defendants appeal from a judgment, wherein the trial court concluded that the term "brand," as used in the North Carolina Beer Franchise Law (hereinafter "BFL"), denotes a common identifying name, rather than a specific malt beverage. Defendants contend that the trial court's interpretation contravenes well-settled canons of statutory construction. However, having carefully reviewed defendants' assignments of error, we uphold the trial court's interpretation. The pertinent facts follow.

In North Carolina, malt beverages are distributed and sold by means of a three-tier system: The first tier is occupied by the supplier, who manufactures and/or imports the product; the second tier is occupied by the wholesale distributor, who purchases the product from the supplier and delivers it to the retailers; and the third tier is occupied by the retailer, who sells the product directly to the consumer. Plaintiff Mark IV Beverage, Inc. (hereinafter "Mark IV") is a wholesaler who began distributing malt beverages manufactured by

Molson Breweries of Canada (hereinafter "Molson") in 1979. In 1990, Mark IV and Martlet Importing Company (hereinafter "Martlet"), a supplier of Molson's malt beverages, entered into a franchise agreement entitling Mark IV to distribute Molson Export Ale, Molson Golden, Molson Canadian and Molson Light in the cities of Thomasville, Liberty and Randleman, in the counties of Alamance, Caswell, Guilford, Person and Rockingham, and in the western portion of Stokes County (hereinafter "the Territory"). The 1990 agreement was filed with the North Carolina Alcoholic Beverage Control Commission (hereinafter "the ABC Commission"), as required by the BFL. At the time the parties executed the agreement, it covered all of the products then existing in the Molson family.

In April of 1993, Miller Brewing Company (hereinafter "Miller") acquired a twenty percent partnership interest in Molson. By virtue of this transaction, and through certain Miller subsidiaries, Miller obtained all of the Molson and Miller stock; thus, Martlet became a wholly-owned subsidiary of Miller. When this acquisition occurred, Miller already had a wholesale distribution system in place.

In 1993, Molson developed a new malt beverage called Molson Ice, and in August of that year, Martlet applied for and received approval from the ABC Commission to import Molson Ice into North Carolina. Martlet also submitted a Beer Analysis Form, which designated Mark IV as the wholesaler of Molson Ice, but failed to designate the territory in which it was authorized to distribute the product. Then, in October or November of 1993, legal counsel for Miller, Molson, and Martlet (collectively, hereinafter "supplier-defendants") informed the ABC Commission, in the course of a telephone conversation with its general counsel, Ann Fulton, that Martlet intended to withdraw its submission of Mark IV as a wholesaler of Molson Ice in North Carolina. In response to this information, Fulton advised supplier-defendants' attorney that Molson Ice was under the same brand as Molson Golden, Molson Canadian, and Molson Light; that Molson was the brand name; and that all products under the Molson name are of the same brand, and thus, Molson Ice should be assigned to Molson distributors who held existing franchise agreements with Martlet.

On 30 November 1993, counsel for supplier-defendants met with Fulton and other ABC Commission officials. During this meeting, supplier-defendants' attorney advised ABC Commission officers that with respect to Molson Ice, Martlet intended to enter into distribution

MARK IV BEVERAGE, INC. v. MOLSON BREWERIES USA

[129 N.C. App. 476 (1998)]

agreements with the traditional Miller wholesalers, and not with the traditional Molson wholesalers in North Carolina. On that same day, supplier-defendants' attorney delivered to the ABC Commission a letter dated 29 November 1993, withdrawing Martlet's reference to Mark IV on the Beer Analysis Form for Molson Ice. In addition, Martlet provided the ABC Commission with a territorial agreement purporting to authorize I. H. Caffey Distributing Company, Inc. (hereinafter "Caffey"), a wholesaler of malt beverages supplied by Miller, to distribute Molson Ice in the Territory. Prior to executing this agreement, Martlet did not notify Mark IV of its intention to distribute Molson Ice through Caffey. Caffey has been distributing Molson Ice in the Territory since December of 1993.

Mark IV instituted an action in December of 1993, alleging that supplier-defendants violated the BFL, the common law of unfair trade practices, and North Carolina General Statutes section 75-1.1. The parties waived a trial by jury. Also, the parties agreed that the proceedings would be bifurcated and that the trial court would first address the "brand issue"—whether under the BFL, the word "brand" means common identifying trade name—and related constitutional questions. At the time supplier-defendants assigned Caffey the right to distribute Molson Ice in the Territory, the term "brand" was not defined anywhere in the BFL or in the ABC Commission's regulations. However, in August of 1994, the ABC Commission adopted a definition of "brand," effective 1 November 1994, which relevantly provides as follows:

> For purposes of Article 13 of Chapter 18B, the Beer Franchise Law, a distribution agreement between a supplier and wholesaler applies to all products distributed by the supplier under the same brand name. Different categories of products manufactured and marketed under a common identifying trade name are considered to be the same brand; e.g., the "Old Faithful" brand manufactured by Yellowstone Brewery Co. would include "Old Faithful", "Old Faithful Light", "Old Faithful Draft", "Old Faithful Dry" and other products identified principally by and relying upon the "Old Faithful" name, but would not include "Old Teton" which was also manufactured by Yellowstone Brewery Co.

N.C. Admin. Code tit. 4, r. 2T.0103 (November 1994).

The matter was heard on 19 August 1996, at a special session of the Rockingham County Superior Court. At the hearing, Mark IV argued that, under the BFL, the term "brand" connotes the common

identifying name used in marketing a product. Thus, as to "Molson Ice," Mark IV submitted that the common identifying name, "Molson," is the brand name and that the word "Ice" represents the specific product marketed under the Molson brand. Defendants maintained, on the other hand, that "brand," under the BFL, means the name of a specific malt beverage product. Following from this argument, defendants proposed that "Molson Ice" was a separate and distinct brand from "Molson Golden" or "Molson Light," and therefore, defendants were under no obligation to distribute Molson Ice through Mark IV.

At the close of Mark IV's evidence, and again at the close of all of the evidence, Caffey moved for Judgment of Involuntary Dismissal. On a record of stipulated facts, deposition testimony, and exhibits, the trial court entered a judgment, dated 12 November 1996, announcing, *inter alia*, the following conclusions: (1) that "brand" means a common identifying trade name rather than the name of a specific malt beverage product; (2) that the 1990 agreement between Martlet and Mark IV constitutes a franchise agreement for the "Molson" brand, which includes Molson Ice; (3) that Martlet must distribute Molson Ice through Mark IV in the Territory; and (4) that the BFL, as interpreted by the trial court, is constitutional. Additionally, the trial court denied Caffey's motion. Caffey and supplier-defendants appeal.

This appeal involves issues of statutory construction, to wit: (1) whether the trial court erred in concluding that the BFL entitles one wholesaler to sue another, based upon an alteration or termination of a franchise agreement; and (2) whether the trial court erred in determining that "brand," as used in the BFL, means a common identifying name. For the reasons stated herein, we affirm the order of the trial court.

Where an appeal presents questions of statutory interpretation, full review is appropriate, and "the conclusions of law 'are reviewable de novo.' " *N.C. Reinsurance Facility v. N.C. Insurance Guaranty Assn.*, 67 N.C. App. 359, 362, 313 S.E.2d 253, 256 (1984) (quoting *Humphries v. City of Jacksonville*, 300 N.C. 186, 187, 265 S.E.2d 189, 190 (1980)). Accordingly, we will consider de novo whether the BFL grants Mark IV a right to enjoin Caffey from distributing Molson Ice in the Territory and whether "brand" means the common identifying name under the BFL.

### DEFENDANT CAFFEY

**[1]** Caffey argues that the terms of the BFL must be strictly construed, because the statute derogates common law. With that, Caffey contends that because the BFL does not specifically prescribe injunctive relief against a competing wholesaler, the trial court erred in concluding that Mark IV had a statutory right to sue Caffey. Further, Caffey argues that relief based upon an altered, terminated, or unrenewed franchise agreement reaches suppliers only. We cannot agree.

"In matters of statutory construction, the task of the courts is to ensure that the purpose of the Legislature, the legislative intent, is accomplished." *Ellis v. N.C. Crime Victims Compensation Comm.*, 111 N.C. App. 157, 163, 432 S.E.2d 160, 164 (1993). To determine the legislative intent, the courts must look to the language, spirit, and goal of the statute. *State ex rel. Utilities Commission v. Public Staff*, 309 N.C. 195, 210, 306 S.E.2d 435, 444 (1983). A well-settled rule of statutory construction provides that a facially clear and unambiguous statute requires no interpretation. *Peele v. Finch*, 284 N.C. 375, 200 S.E.2d 635 (1973). Furthermore, where a statute is explicit on its face, the courts have no authority to impose restrictions that the statue does not expressly contain. *Utilities Comm. v. Electric Membership Corp.*, 275 N.C. 250, 260, 166 S.E.2d 663, 670-71 (1969).

The BFL states that "[a] wholesaler whose franchise agreement is altered, terminated or not renewed in violation of this Article may bring an action to enjoin such unlawful alteration, termination or failure to renew." N.C. Gen. Stat. § 18B-1306(a) (1995). While the statute explicitly provides that monetary damages are recoverable only against the supplier, it does not in any way restrict the availability of injunctive relief. *See* N.C. Gen. Stat. § 18B-1306(b) (1995). Thus, we are not inclined to limit an injured wholesaler's equitable relief such that it may only seek to enjoin a supplier. Had the General Assembly intended to confine injunctive relief to actions against suppliers, it would have worded the statute accordingly, as it did concerning monetary damages. Hence, we are not persuaded by Caffey's argument. In view of our holding in this regard, we need not address Caffey's alternative argument that the trial court erred in concluding that it was a necessary party to this litigation.

**[2]** Next, Caffey challenges the trial court's determination that Mark IV's complaint successfully stated a cause of action against Caffey. Caffey contends that the pleading lacked factual allegations from which it could be inferred that Caffey owed Mark IV any legal or equi-

table duty. Caffey, however, failed to preserve this question for our review; therefore, this argument is not properly before us.

The scope of appellate review is limited to those issues presented by assignment of error set out in the record on appeal. N.C.R. App. P. 10(a); *Koufman v. Koufman*, 330 N.C. 93, 97-98, 408 S.E.2d 729, 731 (1991). Thus, where "no assignment of error corresponds to the issue presented, [the] matter is not properly presented for [this Court's] consideration." *State v. Williamson*, 333 N.C. 128, 138, 423 S.E.2d 766, 771 (1992).

In its brief, Caffey purports to base this argument on Assignment of Error 3, which reads as follows:

Defendant I.H. Caffey Distributing Company assigns as error the Superior Court's ruling that Defendant I.H. Caffey has distributed Molson Ice in violation of the Beer Franchise Law, as reflected in Conclusion of Law No. 6, on the grounds that the Beer Franchise Law does not proscribe defendant I.H. Caffey's distribution nor does the Beer Franchise Law provide a cause of action by one wholesaler against another wholesaler.

Immediately, we note that this assignment of error does not object to the complaint's factual sufficiency, but to its legal basis. Equally noteworthy is that Caffey embarks upon this discussion by, "[a]ssuming, *arguendo*, that the Beer Franchise Law provides both a right and a remedy to Mark IV to sue another wholesaler." Hence, Assignment of Error 3 cannot support the present argument, and as none of Caffey's assignments correspond to this issue, it is not properly offered for our consideration. We proceed, then, to the arguments advanced by supplier-defendants.

## SUPPLIER-DEFENDANTS

[3] By their first assignment of error, supplier-defendants contest the ruling by the trial court that the term "brand," as used in the BFL, denotes a common identifying trade name, such as Molson, rather than a specific malt beverage product, such as Molson Ice. At the outset, we recognize that no North Carolina case law or statutory authority speaks directly to this issue. However, mindful of our well-established principles of statutory interpretation, we conclude that the trial court correctly construed the term "brand."

The relationship between a supplier of malt beverages and a wholesale distributor is embodied in a "franchise agreement." *See*

N.C. Gen. Stat. § 18B-1302 (1995). A franchise agreement may arise in many ways, but it most commonly occurs when the parties file a "distribution agreement" with the ABC Commission, as required by the BFL. Under the BFL, a distribution agreement must "designat[e] the brands of the supplier which the wholesaler is authorized to sell and the territory in which such sales may take place." N.C. Gen. Stat. § 18B-1303(a) (1995). The statute further dictates that "[n]o supplier may provide by a distribution agreement for the distribution of a brand to more than one wholesaler for the same territory." *Id.* However, "[i]f the supplier sells several brands, the agreement need not apply to all brands." *Id.* In addition, the BFL prohibits a supplier from altering, terminating, or failing to renew a wholesaler's franchise agreement, except for good cause and with ninety days notice. N.C. Gen. Stat. § 18B-1304(2) (1995). Still, a wholesaler is allowed an opportunity to cure the supplier's "good cause." N.C. Gen. Stat. § 18B-1305(b) (1995).

In the case at issue, supplier-defendants argue that, as the term is used in the BFL, "brand" means a single malt beverage product. They contend that because other jurisdictions have recognized this interpretation of "brand," this Court should follow suit. Supplier-defendants point to three out-of-state cases to support this position. The first, *Briggs Inc. v. Martlet Importing Co., Inc.*, 57 F.3d 18 (1st Cir. 1995), is factually similar to the present case. Briggs, a wholesale beer distributor, filed suit to enjoin Martlet Importing Co., a supplier, from granting a competing wholesaler exclusive rights to distribute Molson Ice, a new malt beverage, in a territory where Briggs had exclusive distribution rights under an existing wholesale license agreement with Martlet. The trial court granted summary judgment for the supplier, and the appellate court affirmed, holding that the new product was a separate "brand" under the Maine Wholesale Licensee Agreement Act. The court reasoned that by using "brand" in both its singular and plural forms and in light of the interpretation adopted by the liquor enforcement agency, the legislature intended the term to mean a single label of the supplier.

The next case, *Crown Distributing Co., Inc. v. Molson Breweries U.S.A., Inc.*, No. 93-3072-G (W.D. Tenn. January 30, 1995), also bears a factual resemblance to the instant case. The United States District Court for the Western District of Tennessee entered an order granting summary judgment to the supplier-defendants in an action brought by the plaintiff-wholesaler, claiming that the supplier-defendants violated the parties' distribution agreement by assigning

the right to distribute Molson Ice to a competing wholesaler. Based on the interpretation by the Tennessee Department of Revenue and the consistent practice of the wholesaling industry, the court found that under Tennessee's Wholesale Beer Tax Act, the term "brand" means a single beer product.

Despite the factual similarities, *Briggs* and *Crown* materially differ from the present case. In those cases, unlike here, the agencies charged with enforcing the relevant statutes construed the term "brand" to mean a single label or malt beverage. Indeed, the court in *Briggs* pertinently stated:

> Briggs urges us to give no deference to the agency's interpretation because of the lack of a definition in the Act, the absence of case law, and the fact that [the Maine Director of Licensing] is not an attorney. This is an original, if meritless, argument. As the Maine Supreme Judicial Court has made clear, 'We shall accept the agency's construction, especially if, as here, it is long established . . . unless it clearly violates the legislative intent.'

*Briggs*, 57 F.3d at 20-21 (quoting *Bar Harbor Banking and Trust Co. v. Superintendent of the Bureau of Consumer Protection*, 471 A.2d 292, 296 (Me. 1984)). Inasmuch as *Briggs* and *Crown* encourage courts to defer to the administrative agency's interpretation of a statute, supplier-defendants' reliance on these decisions is misplaced.

Supplier-defendants also cite *Jim Taylor Corp. v. Guinness Import Co.*, 897 F. Supp. 556 (M.D. Fla. 1995), as support for their construction of the term "brand." Supplier-defendants apparently rely on language contained in a footnote of the *Jim Taylor* opinion in which the court mentioned that for purposes of the motion under its consideration, Moosehead Canadian Ice would be treated as a distinct brand of beer from Moosehead or Moosehead Light. As this case neither addressed nor decided the "brand issue," it does not aid supplier-defendants' position. We, therefore, reject this argument as unpersuasive.

Further, supplier-defendants argue that the ABC Commission's stated interpretation of the term "brand" deserves no deference, because the agency's regulations repeatedly use "brand" and "product" interchangeably to refer to a specific malt beverage. Again, we disagree.

While the construction of a statute by the agency charged with its enforcement is not binding on this Court, it is relevant and is entitled

to due consideration. *MacPherson v. City of Asheville*, 283 N.C. 299, 307, 196 S.E.2d 200, 206 (1973). Our Supreme Court has recognized the significance of an agency's interpretation, regarding it as "strongly persuasive," *Shealy v. Associated Transport*, 252 N.C. 738, 742, 114 S.E.2d 702, 705 (1960), and even "*prima facie* correct," *In Re Vanderbilt University*, 252 N.C. 743, 747, 114 S.E.2d 655, 658 (1960). The Court has stated that:

> "[t]he construction placed upon a statute by the officers whose duty it is to execute it is entitled to great consideration, especially if such construction has been made by the highest officers in the executive department of the Government or has been observed and acted upon for many years; and such construction should not be disregarded or overturned unless it is clearly erroneous."

*Gill v. Commissioners*, 160 N.C. 144, 153, 76 S.E. 203, 208 (1912) (citation omitted).

In the case *sub judice*, the trial court made the following finding of fact:

> The ABC Commission has historically interpreted the term "brand" as the common identifying name used to identify a manufacturer's line of products. For example, the common identifying name for a line of products (i.e., Molson) was the brand, and the different types of products (i.e., Molson Golden, Molson Export, and Molson Ice) under that common name would all be considered the same brand.

It is well-settled that "the trial court's findings of fact have the force and effect of a verdict by a jury and are conclusive on appeal if there is evidence to support them, *even though the evidence might sustain findings to the contrary.*" *In re Estate of Trogdon*, 330 N.C. 143, 147, 409 S.E.2d 897, 900 (1991). Ann Fulton, general counsel for the ABC Commission, testified that the agency understood the term "brand," as used in the BFL, to mean the common identifying name used in the marketing of a product. Additionally, Fulton stated that consistent with the agency's understanding of the term "brand," a wholesaler expects to and does receive new products under a brand name for which it has a franchise. As there was evidentiary support for the court's finding, it is conclusive, and we will not revisit the issue of how the agency interprets the term "brand." Moreover, since the courts of this state accord due deference to an administrative

agency's construction of a statute, as did the courts in *Briggs* and *Crown*, we hold that the trial court did not err in construing "brand" to mean a common identifying name under the BFL. Supplier-defendants' argument to the contrary fails.

**[4]** With their final assignment of error, supplier-defendants contend that the BFL is unconstitutional, when construed so that "brand" means a family of malt beverages. Specifically, supplier-defendants argue that under the trial court's construction, the BFL unreasonably interferes with the rights of suppliers to freely contract with wholesalers, in violation of the Fourteenth Amendment Due Process Clause and North Carolina's Law of the Land Clause. Again, we must disagree.

Every presumption is to be made in favor of the constitutionality of a state statute. *Gardner v. Reidsville*, 269 N.C. 581, 594-95, 153 S.E.2d 139, 150 (1967). An act of the General Assembly should not be pronounced unconstitutional unless it is plainly so. *Id.* A party challenging the constitutionality of a particular statute bears the heavy burden of demonstrating "beyond all reasonable doubt" that the statute, in fact, violates some constitutional provision. *Board of Managers v. Wilmington*, 237 N.C. 179, 186, 74 S.E.2d 749, 755 (1953).

The right to contract is a property right that falls within the protection of state constitutions and the Fourteenth Amendment to the United States Constitution. *Alford v. Insurance Co.*, 248 N.C. 224, 227, 103 S.E.2d 8, 10-11 (1958). Nevertheless, "freedom of contract is a qualified and not an absolute right." *Morris v. Holshouser*, 220 N.C. 293, 296, 17 S.E.2d 115, 117 (1941). Thus, "[t]he guaranty of liberty does not withdraw the right of legislative supervision, or deny the power to provide restrictive safeguards and reasonable regulations." *Id.* at 296, 17 S.E.2d at 117-18 (citation omitted).

The North Carolina Law of the Land Clause and the Fourteenth Amendment Due Process Clause "have been consistently interpreted to permit the state, through the exercise of its police power, to regulate economic enterprises provided the regulation is rationally related to a proper governmental purpose." *Poor Richard's, Inc. v. Stone*, 322 N.C. 61, 64, 366 S.E.2d 697, 699 (1988). The test for determining the constitutionality of a statute under the law of the land is whether the legislature has employed reasonable means to effect a proper governmental purpose. *Id.* The due process inquiry is whether "the state measure bear[s] a rational relation to a constitutionally per-

missible objective." *Id.* at 67, 366 S.E.2d at 700 (citing *Ferguson v. Skrupa,* 372 U.S. 726, 10 L. Ed. 2d 93 (1963)).

Our General Assembly has articulated the following purposes for enacting the BFL:

> [R]egulation of the business relations between malt beverage manufacturers and importers and the wholesalers of such products is necessary to:
>
> (1) Maintain stability and healthy competition in the malt beverage industry in this State.
>
> (2) Promote and maintain a sound, stable and viable three-tier system of distribution of malt beverages to the public.
>
> (3) Promote the compelling interest of the public in fair business relations between malt beverage suppliers and wholesalers, and in the continuation of beer franchise agreements on a fair basis.
>
> (4) Maintain a uniform system of control of the sale, purchase and distribution of malt beverages in the State.

N.C. Gen. Stat. § 18B-1300 (1995).

Supplier-defendants assert that under the trial court's construction of "brand," a supplier, by contracting to sell just one of its malt beverage products through a given wholesaler, is forever "locked" into distributing all future malt beverages that carry the same identifying trade name through that same wholesaler. The BFL, however, only restricts the distribution of single brands within delineated territories. Furthermore, where good cause is shown and not cured, and where appropriate notice is given, a supplier may alter, terminate, or fail to renew a franchise agreement. N.C.G.S. § 18B-1305. In light of the purposes articulated and the means employed to effect them, we conclude that supplier-defendants have failed to show that the BFL, as interpreted by the trial court, is constitutionally infirm. This argument, therefore, fails.

For the foregoing reasons, the order of the trial court is affirmed.

Affirmed.

Judges LEWIS and McGEE concur.