IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1113

Filed 1 October 2025

Person County, No. 23CVS000396-720

SEANPATRICK LEECH, Plaintiff,

v.

STATE OF NORTH CAROLINA, JOSHUA STEIN, in his official capacity as Attorney General of the State of North Carolina, PHILIP BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate, TIMOTHY MOORE, in his official capacity as Speaker of the North Carolina House of Representatives, and MICHAEL WATERS, in his official capacity as District Attorney for the Eleventh Prosecutorial District of North Carolina, Defendants.

Appeal by Plaintiff from order entered 3 June 2024 by Judge Edwin G. Wilson,

Jr. in Person County Superior Court. Heard in the Court of Appeals 13 August 2025.

> *Ellis & Winters LLP, by Jeffrey S. Warren, Jonathan D. Sasser, Michelle A. Liguori, and Tyler C. Jameson, for the Plaintiff.*

> *Attorney General Jeff Jackson, by Special Deputy Attorney General, Elizabeth Curran O'Brien, for Michael Waters; and Special Deputy Attorney General Michael E. Bulleri, for Philip Berger and Timothy Moore, Defendants-Appellees.*

WOOD, Judge.

SeanPatrick Leech ("Plaintiff") appeals from an order granting Motions to

Dismiss for defendant Michael Waters ("Defendant Waters") and defendants State of

N.C., Joshua Stein, Philip Berger, and Timothy Moore (collectively "State

Defendants"). On appeal, Plaintiff raises three issues, (1) did the trial court err in

considering the Affidavit of Defendant Waters and other evidence outside the pleadings when ruling on Defendant's Motion to Dismiss; (2) did the trial court err in granting Defendant Water's Motion to Dismiss for failure to state a claim pursuant to Rule 12(b)(6); and (3) did the trial court err in granting the State Defendants' Motion to Dismiss pursuant to Rule 12(b)(6). After careful review of the record, we vacate the trial court's order and remand for rehearing.

## I.   Factual and Procedural Background

The following facts are alleged in Plaintiff's complaint. In April 2021, the Roxboro Police Department ("RPD") received a 911 call about a rape in progress. The RPD dispatched an officer to the home of the alleged victim to investigate. The officer arrested the suspect at the scene, and the victim left the home. When the alleged victim returned home a few days later, she found a boxcutter in her bedroom that she did not recognize. She called RPD to report what she found, and RPD sent Plaintiff to interview the victim. Multiple times the victim denied the boxcutter was used during the alleged rape and stated she did not know from where the boxcutter came. Plaintiff returned to his patrol car and called his supervisor ("Sergeant") to explain the situation. Plaintiff told Sergeant he intended to dispose of the boxcutter if the original investigating officer confirmed there was no report of a boxcutter during the rape. According to Plaintiff, Sergeant approved his plan. Plaintiff then met with the responding officer who confirmed the findings in the report, also denying that a boxcutter was used in the rape. Having confirmed that a boxcutter was not used

during the alleged rape nor listed as evidence, Plaintiff disposed of it. Plaintiff did not knowingly dispose of evidence.

Approximately one week after Plaintiff disposed of the boxcutter, the District Attorney's ("DA") office contacted RPD seeking photographs of the boxcutter. Plaintiff immediately explained the situation and his disposal of the boxcutter.

On 25 May 2021, the RPD began an internal affairs investigation. Plaintiff fully cooperated with the investigation and accepted responsibility for his actions. He was not deceitful or misleading.

On 26 July 2021, Defendant Waters, the District Attorney, informed Plaintiff that his office was investigating potential impeachment evidence within the meaning of *Giglio v. United States*. Defendant Waters met with Plaintiff but did not disclose what evidence, if any, was under consideration in his *Giglio* determination. According to Plaintiff, Defendant Waters did not inform Plaintiff that anyone had accused him of dishonesty or indicated he believed Plaintiff was being dishonest.

On 26 September 2021, Defendant Waters sent a *Giglio* letter to Plaintiff which stated the DA's office would "no longer be able to use [Plaintiff] as a witness for the State of North Carolina in any criminal or traffic case." Defendant Waters also sent the letter to Plaintiff's employer, RPD. The basis stated for the letter was,

> (1) Plaintiff mishandled potential evidence in a felony prosecution, and
> (2) when confronted, identified a fellow officer who reportedly advised that if not used in the crime, disposing of the boxcutter was permissible. The fellow officer denies

the assertion in any conversation. This assertion by [Plaintiff] is not corroborated by other evidence and this dishonesty has implication beyond the destruction of the boxcutter.

Defendant Waters identified Sergeant as the "other officer." This assertion of dishonesty conflicted with the findings of the internal affairs investigation which determined only "that there was an inconsistency in [Plaintiff's] and [Sergeant's] statement[s]." According to Plaintiff, Sergeant's statements conflicted during the investigations. First, Sergeant "denied having a phone call conversation with [Plaintiff] . . . about the agreement to 'scrap' the [boxcutter]." Then, Sergeant changed his story stating, he "did not recall discussing approval to 'scrap' the [boxcutter]."

At the time Defendant Waters published the *Giglio* letter Plaintiff was not involved with any current judicial proceedings or criminal processes and there was no way for Defendant Waters to know whether Plaintiff's alleged conduct could "negate the guilt of the accused or mitigate the offense." Defendant Waters offered no explanation for how Plaintiff's conduct would trigger a blanket *Brady*[1] or *Giglio*[2] obligation in the future.

---

[1] Under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215, 218 (1963) prosecution has an obligation to disclose evidence favorable to the defense where the evidence is material either to guilt or to punishment. This includes impeachment evidence against government witnesses as well as exculpatory evidence. *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481, 490 (1985).

[2] *Giglio* created the obligation for prosecutors to disclose evidence that could affect the credibility of its witnesses even if that evidence is with another prosecutor. *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104, 109 (1972).

On 27 September 2021, Plaintiff received Notice of Pre-Disciplinary Conference from the RPD which indicated that "based on the findings of each allegation below, and specifically Allegation 4, *Giglio*, the recommended disciplinary action is termination." The notice explained that Plaintiff had two options: face termination, which would result in the generation of a public record explaining the circumstances of his termination, or resign, which would not. Plaintiff chose to resign in an effort to salvage his reputation and mitigate the effect of the *Giglio* Letter. As the termination was recommended specifically because of the *Giglio* letter and RPD and the City of Roxboro have no authority to withdraw, rescind, or even challenge Defendant Waters' *Giglio* letter, appealing the termination would have been futile.

On 1 October 2021, the *Giglio* Statute, N.C. Gen. Stat. §17C-16, went into effect. The statute requires anyone who has received a *Giglio* letter notifying them that they may not be called to testify to provide a copy of that notification to the Criminal Justice Standards Division ("CJSD") to be entered into its database. Additionally, if any officer in the *Giglio* Statute's database seeks to transfer his or her certification to another law enforcement agency, the Statute directs the CJSD to republish the *Giglio* determination to the officer's new agency head and either the local elected district attorney or, if the new agency is a state agency, to every elected district attorney in the State. The statute provides an officer with the right to a review hearing for the sole purpose of determining whether he or she had actually been issued a *Giglio* letter; however, the statue does not allow for a review of the letter's

allegations to determine whether the allegations support the publication of the letter. N.C. Gen. Stat. §17C-16(d).

In July 2022, Plaintiff's counsel contacted the Department of Justice ("DOJ") requesting an independent investigation and opportunity to contest the allegations. A DOJ investigator conducted an investigation, and on 22 February 2023, Plaintiff was heard before the Probable Cause Committee of the Criminal Justice Education and Training Standards Commission ("CJSC"). The Probable Cause Committee found no probable cause to support either of the accusations in the *Giglio* letter; however, neither the Probable Cause Committee nor the CJSC have the authority to withdraw or rescind the *Giglio* letter or to remove Plaintiff from the CJSD database.

On 13 March 2023, through counsel Plaintiff requested that Defendant Waters withdraw the *Giglio* letter considering the independent investigation and hearing. On 24 April 2023, Defendant Waters informed Plaintiff's counsel that Defendant would not withdraw Plaintiff's *Giglio* letter.

On 16 June 2023, Plaintiff filed a complaint against both Defendant Waters for constitutional violations as well as State Defendants for both a facial challenge and an as applied challenge to N.C. Gen. Stat. §17C-16. State Defendants filed a Motion to Dismiss on 24 July 2023, and Defendant Waters filed a Motion to Dismiss on 21 August 2023. The trial court conducted a hearing on 6 February 2024. On 21 February 2024, the trial court requested all parties to answer seven questions by filing supplemental briefings. Attached to Defendant Waters' supplemental brief was

an affidavit and two letters. On 26 April 2024, Plaintiff filed an Objection and Motion to Strike Defendant Waters' supplemental materials. On 3 June 2024, the trial court entered an order granting both Motions to Dismiss without ruling on Plaintiff's Motion to Strike. The trial court cited Defendant Waters' supplemental materials in its dismissal order. On 26 June 2024, Plaintiff filed notice of appeal.

## II.    Analysis

On appeal Plaintiff raises three issues: (1) did the trial court err in considering the Affidavit of Defendant Waters and other evidence outside the pleadings when ruling on Defendant's Motion to Dismiss; (2) did the trial court err in granting Defendant Waters' Motion to Dismiss for failure to state a claim pursuant to Rule 12(b)(6); and (3) did the trial court err in granting the State Defendant's Motion to Dismiss pursuant to Rule 12(b)(6).

### A. Consideration of Evidence Outside the Pleadings

Plaintiff contends the trial court erred when it (1) allowed Defendant Waters to submit evidence outside the pleadings including an affidavit and two letters, (2) did not respond to Plaintiff's Motion to Strike the evidence, and (3) utilized the evidence in its findings of fact when ruling on the Motion to Dismiss without providing a reasonable opportunity for Plaintiff to respond based on Rule 56. We agree.

> If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one

for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

N.C. Gen. Stat. §1A-1, Rule 12(c) (2024). Under a 12(b)(6) determination "the trial court is limited to reviewing the allegations made in the complaint. . . . [The 12(b)(6) motion] is indeed converted to a Rule 56 motion for summary judgment when matters outside the pleading are presented to and not excluded by the court." *Blue v. Bhiro*, 381 N.C. 1, 5-6, 871 S.E.2d 691, 694-95 (2022) (cleaned up). Further, "matters outside the pleading" includes "evidentiary materials used to establish facts." *Id.* at 6, 871 S.E.2d at 695. We review the question of law, whether a Rule 12(b)(6) motion has been converted to a Rule 56 motion, *de novo. Id.* at 5, 871 S.E.2d at 694.

It is well settled that if documents are attached to and expressly incorporated within a complaint, they become part of the complaint and may be considered at the 12(b)(6) hearing. Additionally, "a court may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204, 652 S.E.2d 701, 707 (2007) (quoting *Oberlin Capital, L.P. v. Slavin,* 147 N.C.App. 52, 60, 554 S.E.2d 840, 847 (2001)). In contrast, when the plaintiff "simply refers to a document that was not the subject of [the] action, and the defendant attaches that document or an affidavit concerning that document to support a Rule 12(b)(6) or Rule 12(c) motion, the trial court's

consideration of that document converts the motion into one for summary judgment." *Holton v. Holton*, 258 N.C. App. 408, 419, 813 S.E.2d 649, 657 (2018).

In *Horne v. Town of Blowing Rock*, this Court held it necessary and proper for the trial court to convert the town's motion to dismiss from a 12(b)(6) to a summary judgment motion where plaintiff referenced an insurance policy to support the town's alleged waiver of government immunity in his negligence complaint but the town attached an endorsement from the policy and an insurance adjustor's affidavit to support its motion and the trial court relied on those items to support its ruling. *Horne v. Town of Blowing Rock*, 223 N.C. App. 26, 31, 732 S.E.2d 614, 618 (2012). This Court held  similarly in *Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 204, 652 S.E.2d 701, 707 (2007) (finding that when "none of [the] documents were attached to the complaint or were the subject of plaintiff's complaint" then conversion to summary judgment was appropriate) and *Jenkins v. Batts*, 248 N.C. App. 202, 207, 788 S.E.2d 628, 632 (2016) (noting "the trial court's consideration of affidavits and other information outside the pleadings would have converted such motion into a motion for summary judgment.").

When the trial court considers information outside the pleadings and thereby converts a 12(b)(6) motion to one for summary judgment, the parties must be given reasonable time and "opportunity to present all material made pertinent" by the evidence presented outside the pleadings.  N.C. Gen. Stat. §1A-1, Rule 12(c) (2024). This is meant to "preclude any unfairness resulting from surprise when an adversary

introduces extraneous material on a Rule 12(b)(6) motion, and to allow a party a reasonable time in which to produce materials to rebut an opponent's evidence once the motion is expanded to include matters beyond those contained in the pleadings." *Coley v. N.C. Nat. Bank*, 41 N.C. App. 121, 126, 254 S.E.2d 217, 220 (1979).

In the case *sub judice*, neither Plaintiff's original claim nor Defendant Waters' first response explicitly references Defendant Waters' notice letter or Plaintiff's response letter, which now are contested. On 21 February 2024, the trial court submitted seven questions to the parties and requested their responses by supplemental briefing. The trial court allowed Plaintiff thirty days to file a response brief and allowed Defendant Waters thirty days to respond to Plaintiff's filing. Plaintiff requested permission to respond to Defendant Waters' brief, which the trial court denied.

Most of the questions concerned questions of law or hypothetical situations. However, question six stated:

> District Attorney Waters met with Plaintiff Leech one month after commencement of Internal Affairs' investigation into potential destruction of evidence. There, District Attorney Waters informed Plaintiff Leech that his office was investigating potential *Giglio* impeachment evidence. In what ways was this insufficient to put Plaintiff Leech on notice that he may receive a *Giglio* impairment? In what ways was this inadequate to satisfy any due process obligations?

Plaintiff's brief in response to the trial court's questions, including question six, did not include any reference to the letters in contest, solely reiterating the allegations in the complaint, and the law as they interpreted it. Similarly, the State Defendants' response noted, "matters related to whether, when, and how *Giglio* letters are issued, are not impacted by the *Giglio* statutes. Therefore, State Defendants take no position with respect to this question or Plaintiffs' response." "Matters related to whether, when and how" clearly indicates that the response to question six relates to the evidentiary facts of the matter. This is made clear by Defendant Waters' response brief wherein he explicitly referenced the letters and attached both letters and his affidavit as evidence of Defendant Waters' notice to Plaintiff.

On 26 April 2024, in response to the factual evidence and affidavit added to Defendant Waters' brief, Plaintiff filed an Objection and Motion to Strike describing the materials outside the pleadings and contending that the motion should have been converted to summary judgment and the trial court should have given Plaintiff the opportunity to rebut the evidence. The trial court did not enter a ruling on Plaintiff's Objection and Motion to Strike prior to granting Defendant Waters' Motion to Dismiss. However, the trial court clearly considered the attached materials in contest when issuing its order granting Defendant Waters' Motion to Dismiss. The trial court found as facts,

> 10. Two months later, on July 26, 2021, DA Waters sent Plaintiff a letter notifying him that DA Waters' office was

conducting an investigation into potential impeachment evidence within the meaning of *Giglio v. United States.*

11. Plaintiff subsequently requested a meeting with DA Waters to discuss the allegations made under *Brady v. Maryland* and *Giglio v. United States* against Plaintiff that formed the basis of DA Waters' investigation. Plaintiff and DA Waters later met to discuss the allegations.

Because the trial court allowed material clearly outside of the original pleadings, the 12(b)(6) motion was converted to a motion for summary judgment. The trial court failed to respond to Plaintiff's Objection and Motion to Strike and did not allow Plaintiff time or opportunity to rebut the evidence presented outside the pleadings. Thus, the trial court erred. Therefore, we must remand the claims against Defendant Waters, to allow Plaintiff opportunity to respond as Rule 56 requires. Additionally, we must remand the as-applied challenge to N.C. Gen. Stat. §17C-16 against State Defendants. "An as-applied challenge requires a defendant to show the statute at issue is unconstitutional as applied to the facts of his specific case." *State v. Nanes*, 297 N.C. App. 863, 870, 912 S.E.2d 202, 209 (2025). As Plaintiff was denied the full opportunity to respond to the underlying factual issues in this case, we must also remand the as-applied claim. However, the facial challenge to N.C. Gen. Stat. §17C-16 requires our further consideration.

## B. Facial Constitutional Claim

As the trial court correctly points out, N.C. Gen. Stat. §1-267.1 states when a facial challenge is properly raised in a civil proceeding, the trial court must transfer

the case to a three-judge panel in the Superior Court of Wake County. *Holdstock v. Duke Univ. Health Sys., Inc.*, 270 N.C. App. 267, 272, 841 S.E.2d 307, 311-12 (2020).

"A facial challenge is an attack on a statute itself as opposed to a particular application. Complaints alleging broad constitutional violations constitute facial challenges." *Alexander v. N.C. State Bd. of Elections*, 281 N.C. App. 495, 503, 869 S.E.2d 765, 771 (2022) (quoting *Holdstock*, 270 N.C. App. at 272, 841 S.E.2d at 311). "To state a facial claim for violation of procedural due process rights, the complainant must allege (1) that the 'State has interfered with a liberty or property interest' and (2) that the State did not use 'a constitutionally sufficient procedure to interfere with the liberty or property interest.'" *Ballard v. Shelley*, 257 N.C. App. 561, 568, 811 S.E.2d 603, 608 (2018) (quoting *Lipinski v. Town of Summerfield*, 230 N.C. App. 305, 308, 750 S.E.2d 46, 48–49 (2013)). Additionally, our Supreme Court recently stated "[b]ecause our Fruits of Labor test is a fact intensive inquiry . . . the trial court erred when it entered summary judgment[,]" indicating that facial challenges under the Fruits of Labor clause are fact intensive and summary judgement is rarely proper. *N.C. Bar & Tavern Ass'n v. Stein*, No. 126PA24, _N.C._, _S.E.2d._, 2025 WL 2427604, at *1 (N.C. Aug. 22, 2025).

In the case *sub judice* Plaintiff clearly raised a "facial challenge to the *Giglio* statute [N.C. Gen. Stat. §17C-16] for violation of N.C. Const. art. I, §19" and requested the trial court to declare the statute to be in violation of the North Carolina Constitution. Plaintiff contends that law enforcement officers are denied any due

process protections including notice or hearing prior to being listed in the *Giglio* database based on vague and subjective standards. This claim is analogous to the due process claim this Court heard in *In re W.B.M.* concerning N.C. Gen. Stat. §7B-323 requirements for inclusion on the Responsible Individuals List. *In re W.B.M.*, 202 N.C. App. 606, 621, 690 S.E.2d 41, 52 (2010) (finding, ". . . an individual has a right to notice and an opportunity to be heard before being placed on the RIL.").

When a sufficient facial claim is clearly alleged, the trial court, in compliance with N.C. Gen. Stat. §1-267.1, must resolve all matters not "contingent upon the outcome of the challenge to the act's facial validity" and then transfer the case to a three-judge panel in the Superior Court of Wake County. N.C. Gen. Stat. §1A-1, Rule 42 (2024). Therefore, as noted *supra*, we remand the claims against Defendant Waters, as well as the claim for an as-applied challenge to N.C. Gen. Stat. §17C-16, for the trial court to resolve before transferring the case to the necessary three-judge panel in the Superior Court of Wake County.

**C. Changes to Current Caselaw**

Finally, we note a significant change in the standard of review for North Carolina State Constitutional claims brought under the Fruits of Labor clause, as it applies to this case upon remand. N.C. Const. art. I, § 1. This change is predicated by our Supreme Court's decision in *Kinsley v. Ace Speedway Racing, Ltd,* 386 N.C. 418, 904 S.E.2d 720 (2024) which was more recently reaffirmed in both *N.C. Bar & Tavern Ass'n v. Stein*, No. 126PA24, _N.C._, _S.E.2d._, 2025 WL 2427604 (N.C. Aug.

22, 2025) and *Howell v. Cooper*, No. 252A23, _N.C._, _S.E.2d._, 2025 WL 2427597 (N.C. Aug. 22, 2025). All three Supreme Court opinions were decided after the trial court's ruling and further clarified this Court's previous ruling in *Kinsley v. Ace Speedway Racing, Ltd.*, 284 N.C. App. 665, 877 S.E.2d 54 (2022) on which the trial court's order heavily relied.

The Supreme Court in *Kinsley* clearly defined a "twofold inquiry" to determine whether State action may survive constitutional inquiry under the fruits of their own labor clause: "(1) is there a proper governmental purpose for the statute, and (2) are the means chosen to effect that purpose reasonable?" *Kinsley v. Ace Speedway Racing*, Ltd., 386 N.C. 418, 424, 904 S.E.2d 720, 726 (2024) (quoting *Poor Richard's, Inc. v. Stone*, 322 N.C. 61, 64, 366 S.E.2d 697 (1988)). When addressing proper purpose under the first prong, the Court went on to explain that while the State may assert a proper purpose, "the plaintiff may rebut that assertions with evidence demonstrating that the State's asserted purpose is not the true one, and instead the State is pursuing a different unstated purpose." *Id.* at 425, 904 S.E.2d. at 726. Additionally, when analyzing the facts for the second prong the Court stated,

> [t]he means used must be measured by balancing the public good likely to result from their utilization against the burdens resulting to the businesses being regulated. This requires assessing two fact-specific questions—first, how effective is the state action at achieving the desired public purpose and, second, how burdensome is that state action to the targeted businesses. The analysis then becomes "a question of degree"—given all the options available to the state to advance the governmental

purpose, was it reasonable for the state to choose this approach, with its corresponding benefits and burdens?

*Id.* at 426, 904 S.E.2d at 727 (quoting *Poor Richard's, Inc. v. Stone*, 322 N.C. 61, 66, 366 S.E.2d 697 (1988)).  This new binding precedent may impact on the trial court's reconsiderations of the claims against Defendant Waters as well as the claim for an as-applied challenge to N.C. Gen. Stat. §17C-16.

### III.    Conclusion

After a thorough review of the record, we conclude the trial court erred in allowing material clearly outside of the original pleadings and failing to allow Plaintiff time or opportunity to respond.  We therefore vacate and remand for rehearing on the claims against Defendant Waters, as well as the claim against State Defendants for an as applied challenge to N.C. Gen. Stat. §17C-16, giving Plaintiff the opportunity to respond as Rule 56 requires and with consideration of the new precedent from our Supreme Court.  *Kinsley v. Ace Speedway Racing*, Ltd., 386 N.C. 418, 904 S.E.2d 720 (2024); *N.C. Bar & Tavern Ass'n v. Stein*, No. 126PA24, _N.C._, _S.E.2d._, 2025 WL 2427604 (N.C. Aug. 22, 2025); *Howell v. Cooper*, No. 252A23, _N.C._, _S.E.2d._, 2025 WL 2427597 (N.C. Aug. 22, 2025).  Additionally, as Plaintiff sufficiently pled a facial constitutional claim, the trial court must comply with N.C. Gen. Stat. §1-267.1, resolve all matters not "contingent upon the outcome of the

challenge to the act's facial validity" and then transfer the case to a three-judge panel in the Superior Court of Wake County.  It is so ordered.


VACATED AND REMANDED.

Chief  Judge DILLON and Judge GRIFFIN concur.