IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-305

Filed 3 December 2024

Onslow County, No. 22CVS3264

Anthony L. Proctor, Sr.; Nicole Gonzalez; Octavius Raymond; The Spot Florida Style Seafood, LLC; The Cheesesteak Hustle LLC; and Noah and Isidore, L.L.C., Plaintiffs,

v.

City of Jacksonville, *et al.*, Defendants.

Appeal by Plaintiffs from order entered 2 January 2024 by Judge John E. Nobles, Jr., in Onslow County Superior Court. Heard in the Court of Appeals 24 September 2024.

*Cooper & Kirk, PLLC, by Nicole Jo Moss, and Institute for Justice, by Robert Belden and Justin Pearson, pro hac vice, for Plaintiffs-Appellants.*

*Crossley, McIntosh, Collier, Hanley & Edes, PLLC., by Norwood P. Blanchard, III, for Defendants-Appellees.*

GRIFFIN, Judge.

Plaintiffs appeal from the trial court's order granting Defendants' motion to dismiss under North Carolina Rule of Civil Procedure 12(b)(6). Plaintiffs argue the trial court erred by granting Defendants' motion because it applied the wrong legal test to their claims and, even assuming the trial court had applied the correct legal tests, their complaint adequately alleged facts sufficient to survive dismissal at the Rule 12(b)(6) stage. We agree with both of Plaintiffs' arguments and reverse the trial

court's order dismissing Plaintiffs' claims.

## I.    Factual and Procedural Background

This case arises out of tension between business owners in Jacksonville and the City of Jacksonville ("the City").    In 2014, the City passed the Unified Development Ordinance of the City of Jacksonville ("the UDO").  The UDO provides numerous zoning maps which dictate the areas where a food truck may operate and numerous regulations which provide the conditions food trucks and private-property owners must meet before operating on private property.

### A. The Parties

Plaintiffs are three individual business owners as well as the entities they own and run.  Plaintiff Anthony Proctor, a pastor and Marine veteran, and Octavious Raymond, also a Marine veteran, own food trucks which they operate in and around eastern North Carolina.  Plaintiff Nicole Gonzalez, a lifelong resident of Jacksonville, owns and operates a general store and small motor repair shop on her commercial property in Jacksonville.  Prior to opening the general store and repair shop, Gonzalez's property was used as a restaurant and includes an oversized parking lot suitable for hosting food trucks.  Plaintiffs Proctor and Raymond seek to operate their food trucks in Jacksonville.  Plaintiff Gonzalez seeks to host food trucks in the parking lot of her property.  Plaintiffs allege the UDO's severe limitations on where food trucks may operate is the embodiment of an unlawful protectionist scheme, through which local officials seek to limit competition against brick-and-mortar

restaurants. But for the severe restrictions, Plaintiffs Proctor and Raymond would park their food trucks in Jacksonville and sell their culinary works and wares to Jacksonville's citizens. But for the severe restrictions, Plaintiff Gonzalez would invite food trucks to her private commercial property and allow them to sell food thereon.

## B. The UDO

In their complaint, Plaintiffs challenge select provisions of the UDO which require an annual fee from food truck operators, restrict the area where food trucks may operate, and restrict the signage they may use. Food vendors, the term the UDO utilizes to describe food trucks, shall comply with the following challenged standards, and failure to do so can result in the revocation of the Food Vendor Permit:

> (2) Any Food vendor shall be at least 250 feet from any other parcel containing: 1) a food vendor, 2) a low density, medium density, high density residential or downtown residential zoning district, and or 3) a restaurant;
>
> . . .
>
> (11) Food vendors-may only be placed on private property with written approval (notarized) of the property owner. Documentation shall be displayed in plain view at all times;
>
> (12) Food vendor signage is limited to:
>
> i. Up to one 5' x 5' "A" frame sign within 20 feet of the food truck/trailer/cart;
>
> ii. Signage that can be placed on the food vendors truck/trailer/cart including back lit menu boards. No signage may be placed above the height of the food vendors truck/trailer/cart;

iii. Programmable electronic message center signs are prohibited; and

iv. All other signage is prohibited including LED, rope or strings of lights.

(13) Shall obtain a City of Jacksonville Food Vendor permit (annual) to operate within the City limits and or Extraterritorial Jurisdiction. A copy must be displayed and in plain view at all times. In conjunction with the permit process, the equipment shall be inspected and approved by the Jacksonville Fire Department[.]

Plaintiffs allege the location restrictions prevent food truck operators from conducting business in approximately ninety-six percent of property located in Jacksonville. Because of these restrictions, Plaintiffs contend their rights to engage in safe and lawful occupations are severely infringed.

**C. Procedural History**

On 7 December 2022, Plaintiffs filed their complaint against the City and its officials in Onslow County Superior Court arguing the UDO unduly restricts their ability to operate their businesses and seeking declaratory judgment, injunctive relief, and nominal damages. Plaintiffs brought their claims under: (1) the Freedom of Speech clause; (2) the Equal Protection clause; (3) the Fruits of Their Own Labor clause; and (4) the Law of the Land clause.

Plaintiffs also allege the UDO requires unreasonably high fees in violation of the North Carolina Supreme Court's holding in *Homebuilders Association of Charlotte, Inc. v. City of Charlotte*, 336 N.C. 37, 442 S.E.2d 45 (1994). Two months

later, Defendants moved to dismiss Plaintiffs' complaint. On 17 July 2023, Defendants amended their motion, arguing the complaint should be dismissed pursuant to Rules 12(b)(1), (2), (4), (5), and (6) of the North Carolina Rules of Civil Procedure. After a hearing held on 23 October 2023, the trial court entered an order on 2 January 2024 granting Defendants' motion to dismiss pursuant to Rule 12(b)(6). Specifically, the court stated it "can envision a number of reasonably conceivably rational bases to support the challenged provisions of the [UDO][.]" Plaintiffs timely appeal.

## II.   Analysis

Plaintiffs contend the trial court erred by granting Defendants' motion to dismiss. Specifically, Plaintiffs argue their complaint states colorable claims under the North Carolina Constitution and the trial court erred by applying one blanket legal standard for each claim. We agree.

As a threshold matter, we think it beneficial to engage in a brief summary of municipalities' powers. A municipality may enact ordinances, through the authority granted to it by the General Assembly, that "define, prohibit, regulate, or abate acts, omissions, or conditions, detrimental to the health, safety, or welfare of its citizens and the peace and dignity of the city, and may define and abate nuisances." *Grace Baptist Church of Oxford v. City of Oxford*, 320 N.C. 439, 442–43, 358 S.E.2d 372, 374 (1987) (citing N.C. Gen. Stat. § 160A-174(a) (1982)); *see also* N.C. Gen. Stat. § 160A-174(a) (2023). This grant of power is "broadly construed to include any additional

and supplementary powers that are reasonably necessary to effectuate the grant of power." *Id.* (citing N.C. Gen. Stat. § 160A-4 (1982)); *see also* N.C. Gen. Stat. § 160A-4 (2023) (utilizing the same language).

Furthering this grant, "municipal ordinances are presumed to be valid." *State v. Maynard*, 195 N.C. App. 757, 759, 673 S.E.2d 877, 879 (2009) (citing *McNeill v. Harnett County*, 327 N.C. 552, 565, 398 S.E.2d 475, 482 (1990)). Nonetheless, an ordinance is invalid if it "infringes a liberty guaranteed to the people by the State [] Constitution." N.C. Gen. Stat. § 160A-174(b)(1) (2023). To that end, government action is void "when persons who are engaged in the same business are subject to different restrictions or are treated differently under the same conditions." *Poor Richard's, Inc., v. Stone*, 322 N.C. 61, 67, 366 S.E.2d 697, 700 (1988) (citing *Cheek v. City of Charlotte*, 273 N.C. 293, 298, 160 S.E.2d 18, 23 (1968)).

In brief, municipalities have broad powers to enact ordinances regulating the health, safety, and welfare of their constituents; however, that power ends where unlawful differential and preferential treatment of certain citizens and entities at the expense of others begins. *Id.* With this limitation in mind, we now turn to Plaintiffs' claims regarding the City's use of that power to regulate food trucks.

**D. Standard of Review**

We review a trial court's order granting a motion to dismiss under Rule 12(b)(6) *de novo*. *Bridges v. Parrish*, 366 N.C. 539, 541, 742 S.E.2d 794, 798 (2013). On review, "we consider 'whether the allegations of the complaint, if treated as true, are

sufficient to state a claim upon which relief can be granted under some legal theory.'" *Id.* (quoting *Coley v. State*, 360 N.C. 493, 494–95, 631 S.E.2d 121, 123 (2006)). As a Rule 12(b)(6) motion tests the legal sufficiency of a complaint, *Fuller v. Easley*, 145 N.C. App. 391, 397–98, 553 S.E.2d 43, 48 (2001), "we treat the plaintiffs' factual allegations as true" while ignoring the plaintiffs' legal conclusions. *Skinner v. Reynolds*, 237 N.C. App. 150, 152, 764 S.E.2d 652, 655 (2014) (citations and internal marks omitted). Documents "attached to and incorporated within a complaint" are properly considered when ruling on a 12(b)(6) motion. *Holton v. Holton*, 258 N.C. App. 408, 418–19, 813 S.E.2d 649, 657 (2018).

A 12(b)(6) motion to dismiss should be granted if "one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Bissette v. Harrod*, 226 N.C. App. 1, 7, 738 S.E.2d 792, 797 (2013) (citations and internal marks omitted). *See also Williams v. Devere Const. Co., Inc.*, 215 N.C. App. 135, 142, 716 S.E.2d 21, 27–28 (2011) (utilizing the same standard of review). However, where the trial court applies an incorrect legal standard it "per se abuses its discretion." *Holmes v. Moore*, 384 N.C. 426, 453, 886 S.E.2d 120, 140 (2023) (citation omitted).

## E. Freedom of Speech Claim

Plaintiffs allege the UDO violates their rights to freedom of speech protected

by Article I, section 14 of the North Carolina Constitution. Specifically, Plaintiffs allege the UDO signage provisions "impose speaker- or content-based restrictions on truthful and accurate speech by food trucks and the property owners who host them without being directly related to any substantial or important interest, let alone being narrowly tailored to a compelling government interest."

Plaintiffs argue the trial court erred by applying an inapplicable legal standard to their section 14 claim when granting Defendants' motion to dismiss. Specifically, Plaintiffs argue the trial court applied the rational basis test when it should have applied strict or intermediate scrutiny. In support, Plaintiffs point to the order's language, which states that "the [c]ourt can envision a number of reasonably conceivably rational bases to support the challenged provisions of the UDO, so the Defendant City's motion to dismiss the [c]omplaint should also be [allowed]."

Article 1, section 14 of the North Carolina Constitution provides that "[f]reedom of speech and of the press are two of the great bulwarks of liberty and therefore shall never be restrained, but every person shall be held responsible for their abuse." N.C. Const. art. I, § 14. This provision requires State action regulating commercial speech to satisfy either strict scrutiny or intermediate scrutiny depending on whether the regulation is content-based or content-neutral, respectively. *Hest Tech., Inc. v. State ex rel Perdue*, 366 N.C. 289, 298, 749 S.E.2d 429, 436 (2012) (citing *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 183–84 (1999)). Thus, the rational basis test is inapplicable to the issue Plaintiffs alleged.

We hold the trial court erred by applying the wrong legal test to their freedom of speech claim. *Holmes*, 384 N.C. at 453, 886 S.E.2d at 140. Accordingly, we reverse the trial court's order on Plaintiffs' Article I, section 14 claim and remand for analysis under the applicable legal test. *Id.*

## F. Equal Protection Claim

Plaintiffs next contend the trial court erred by applying the wrong legal standard when dismissing their Equal Protection claim made under Article I, section 19 of the North Carolina Constitution. Defendants contend Plaintiffs are not similarly situated to their alleged comparators. We agree with Plaintiffs and hold their allegations were sufficient to survive dismissal at the Rule 12(b)(6) stage.

Article I, section 19 of the North Carolina Constitution states, in part, that "[n]o person shall be denied the equal protection of the laws[.]" N.C. Const. art. I, § 19. The equal protection clause "'requires that all persons similarly situated be treated alike.'" *Holmes*, 384 N.C. at 437, 886 S.E.2d at 130 (quoting *Blankenship v. Bartlett*, 363 N.C. 518, 521, 681 S.E.2d 759, 762 (2009)).

Under the Equal Protection clause of Article I, section 19, when a party challenges a government regulation that classifies businesses and then treats those businesses differently on the basis of said classification, we apply a twofold test, asking: "(1) [is it] based on differences between the business to be regulated and other businesses and (2) [are] these differences [] rationally related to the purpose of the legislation[?]" *Poor Richard's*, 322 N.C. at 64, 366 S.E.2d at 699 (citing *State v.*

*Harris*, 216 N.C. 746, 758–59, 6 S.E.2d 854, 863 (1940)). If the answers to both questions are yes, then the classification is permitted. *Id.*

To be completely clear, the Supreme Court in *Grace Baptist* stated "[a] party seeking to prove that a municipality's *enforcement* of a facially valid ordinance amounted to a denial of equal protection must show that the municipality engaged in conscious and intentional discrimination." 320 N.C. at 376, 358 S.E.2d at 445 (emphasis added). Plaintiffs do not allege selective enforcement. Rather, they allege "the 250-foot proximity bans thus create an arbitrary and irrational distinction between (a) food trucks and the property owners who want to host them, and (b) other businesses offering food and drink for sale to the general public, including brick-and-mortar restaurants, and property owners who want to host them." As the gravamen of Plaintiffs' claim focuses on the arbitrariness and irrationality of the distinctions drawn in the UDO, not how the UDO is enforced, we agree with Plaintiffs that the test the Supreme Court applied in *Poor Richard's* governs here.

Turning now to Plaintiffs' complaint, we hold they pled facts sufficient to survive 12(b)(6) for their Equal Protection claim. Specifically, Plaintiffs, as food truck owners, allege "[f]ood trucks are engaged in the same business as, or are similarly situated to, other businesses offering food and drink for sale to the general public, including brick-and-mortar restaurants, which are not subject to the 250-foot proximity ban." Plaintiff Gonzalez alleges that she and her company "are engaged in the same property use as, or are similarly situated to, property owners who host

businesses offering food and drink for sale to the general public, including brick-and-mortar restaurants, but are not subject to the 250-foot proximity bans." To exemplify their contention that the UDO provides for different regulations based on arbitrary distinctions and are imposed to further unlawful economic protectionism of restaurants, Plaintiffs also allege "[t]he 250-foot proximity bans do not apply to other businesses offering food and drink for sale to the general public, such as restaurants with indoor and/or outdoor seating, drive-through restaurants, specialty-eating establishments, produce stands, bars, taverns, clubs, convenience or drug stores, gas stations, bed and breakfasts, or museums."

To this point, the regulations do not prevent food trucks from parking or giving food away on eligible property, they only prevent food trucks from "selling food while they are there." Another consequence of the UDO's classifications is that "[a] specialty-eating establishment like a bakery, a coffee shop, or an ice cream shop could open on Eligible Property next door to a restaurant, residential property, or a food truck . . . , but a food truck offering the very same baked goods, coffee, or ice cream could not." Plaintiffs' Complaint contains numerous other factual allegations explaining how the UDO's classifications allow for businesses engaged in substantially the same business as Plaintiffs, namely selling food and drink, to set up shop in areas that food trucks may not.

Despite the alleged similarities between Plaintiffs and other businesses, Plaintiffs' assert that "[t]he 250-foot proximity bans do not draw the classification

between food trucks and all other businesses offering food and drink for sale to the general public, including brick-and-mortar restaurants, based on any legitimate distinguishing feature of food trucks or the property owners who would host them."

These allegations, taken as true, are sufficient to satisfy the first part of the test–the UDO's harsher restrictions on food trucks are not based on any differences between Plaintiffs' businesses, subject to those restrictions, and other business which are not. *See Cheek v. City of Charlotte*, 273 N.C. 293, 296, 160 S.E.2d 18, 21 (1968) ("The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations." (citation and internal marks omitted)). Moreover, Plaintiffs' two allegations that the regulation (1) is "solely to further the unconstitutional purpose of protecting brick-and-mortar restaurants from competition[,]" and (2) classifies "without substantially or reasonably furthering any constitutionally legitimate, permissible, or substantial government purpose[,]" are sufficient to satisfy the second prong of the test. *See Roller v. Allen*, 245 N.C. 516, 525, 96 S.E.2d 851, 859 (1957) (striking down a licensing scheme because, in part, "[t]he [a]ct in question here has as its main and controlling purpose not health, not safety, not morals, not welfare, but a tight control of tile contracting in perpetuity by those already in the business"). Taken as true, Plaintiffs sufficiently allege the UDO's differential classifications are not rationally related to the purpose of the ordinance nor are they based on a permissible purpose.

These allegations essentially allege that, despite being in the same business, Plaintiffs and their respective businesses are "subject to different restrictions [and] are treated differently under the same conditions." *Poor Richard's*, 322 N.C. at 67, 366 S.E.2d at 700 (citing *Cheek*, 273 N.C. at 298, 160 S.E.2d at 23). To Plaintiffs' argument the trial court applied the wrong test, we agree in that the test requires the trial court to engage in a more nuanced analysis than just addressing whether it can envision "reasonably conceivably rational bases." However, the ultimate inquiry does lie in ascertaining whether the government's distinctions are drawn based on actual differences between businesses and whether that distinction is rationally related to the promotion of a permissible government interest. Nonetheless, taking their allegations as true, which we are required to do, Plaintiffs sufficiently alleged facts to survive Defendants' Rule 12(b)(6) motion for their Equal Protection claim. Accordingly, we reverse the trial court's order dismissing this claim.

**G. Fruits of Their Own Labor and Law of Land**

Plaintiffs argue the trial court erred by dismissing their claims brought under the Fruits of Their Own Labor clause contained in Article I, section 1 and the Law of the Land clause contained in Article I, section 19 of the North Carolina Constitution because it utilized the wrong legal standard when dismissing these claims. We agree.

When a state actor infringes upon a right protected by the North Carolina Constitution, the common law "will furnish the appropriate action for the adequate redress of a violation of that right." *Corum v. Univ. of N.C. Through Bd. Of*

- 13 -

*Governors*, 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992) (citation omitted). The Fruits of Their Labor clause provides: "We hold it to be self-evident that all persons are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness." N.C. Const. art. I, § 1.

Our Supreme Court has recognized substantive economic protections under the Fruits of Their Labor Clause prevent the State and consequently its political subdivisions from creating and enforcing regulations that impede "legitimate and innocuous vocations by which men earn their daily bread." *State v. Ballance*, 229 N.C. 764, 770–72, 51 S.E.2d 731, 735–36 (1949) (holding a licensing scheme for photographers violated the Fruits of Their Labor Clause); *see also Roller*, 245 N.C. at 525–26, 96 S.E.2d at 859 (holding a licensing scheme for ceramic tile installers violated the Fruits of Their Labor Clause).

The Law of the Land clause, on the other hand, provides: "No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19. This provision, analogous to the Fourteenth Amendment's Due Process Clause, "serves to limit the [S]tate's police power to actions which have a real or substantial relation to the public health, morals, order, safety or general welfare." *Poor Richard's*, 322 N.C. at 64, 366 S.E.2d at 699 (citing *A-S-P Associates v. City of Raleigh*, 298 N.C. 207, 213, 258 S.E.2d 444, 448 (1979)).

Thus, both the Fruits of Their Own Labor clause and the Law of the Land clause protect citizens' constitutional right to earn a living from arbitrary regulations. *See id.* ("These constitutional protections have been consistently interpreted to permit the [S]tate, through the exercise of its police power, to regulate economic enterprises provided the regulation is rationally related to a proper governmental purpose."). When state actors infringe upon these rights, citizens may seek redress through a *Corum* claim. *See Corum*, 330 N.C. at 782, 413 S.E.2d at 289 ("Therefore, in the absence of an adequate state remedy, one whose constitutional rights have been abridged has a direct claim against the State under our Constitution.").

To sufficiently plead a *Corum* claim, a complaint must allege: (1) a state actor violated the plaintiff's state constitutional rights; (2) "the claim must be colorable, meaning that the claim must present facts sufficient to support an alleged violation of a right protected by the State Constitution[;]" and (3) no adequate state remedy exists for the alleged constitutional violation. *Kinsley v. Ace Speedway Racing, Ltd.*, __ N.C. __, __, 904 S.E.2d 720, 726 (2024) (cleaned up).

With respect to the second prong, "[a] single standard determines whether [an] ordinance passes constitutional muster imposed by both section 1 and the 'law of the land' clause of section 19: the ordinance must be rationally related to a substantial government purpose." *Treants Enter., Inc. v. Onslow County*, 320 N.C. 776, 778–79, 360 S.E.2d 783, 785 (1987). "[T]o survive constitutional scrutiny under this provision, the challenged state action 'must be reasonably necessary to promote the

accomplishment of a public good, or to prevent the infliction of a public harm.'" *Ace Speedway Racing, Ltd.*, __ N.C. at __, 904 S.E.2d at 726 (quoting *Ballance*, 229 N.C. at 768, 51 S.E.2d at 731 (1949)). "This test involves a "twofold" inquiry: '(1) is there a proper governmental purpose for the statute, and (2) are the means chosen to effect that purpose reasonable?'" *Id.* (quoting *Poor Richard's*, 322 N.C. at 64, 366 S.E.2d at 697).

As the test for colorability is the same, we analyze the sufficiency of both Plaintiffs' Fruits of Their Labor claim and Law of the Land claim below. Here, Plaintiffs pled the City of Jacksonville, a municipality authorized to act by the General Assembly, and its officials violated their Article I, sections 1 and 19 rights through the enactment and enforcement of the UDO. As municipalities are State actors in that they derive their power from the General Assembly, *see King v. Town of Chapel Hill*, 367 N.C. 400, 406, 758 S.E.2d 364, 370 (2014) ("The General Assembly has delegated a portion of this [police] power to municipalities through N.C. Gen. Stat. § 160A-174."), we hold this allegation sufficient to meet the requirements of the first prong necessary to allege a *Corum* claim. Next, Plaintiffs allege, and we agree, that no administrative remedies were available to them. As Defendants do not contest either of these two prongs, we only address whether Plaintiffs' Complaint alleges facts sufficient to support colorable Article I, section 1 and section 14 claims under the standard set forth in *Poor Richard's*.

Here, Plaintiffs allege the City and its officials enacted the UDO, and the

challenged provisions therein, "to protect brick-and-mortar restaurants from competition." In support of this contention, Plaintiffs point to the UDO's enactment history. Plaintiffs allege the UDO initially provided for a less restrictive scheme which would have allowed food trucks to operate within a larger area of Jacksonville. However, the UDO was redrafted because "in the restaurant owners' view, the original overlay map did not sufficiently insulate them from competition." As a result of this pressure, "the City Council considered allowing food trucks only if they did not operate within 250 feet of, among other things, any other parcel with a restaurant." This consideration ultimately became the codified version of the UDO.

As entities who are engaged in the same business should be subject to the same restrictions, *Poor Richard's*, 322 N.C. at 67, 366 S.E.2d at 700, an allegation that the government enacted a regulation solely to benefit a subset of businesses at the expense of another subset within the same line of business, here food purveyors, is sufficient to meet prong one. Thus, taking Plaintiffs' allegations as true, we hold they sufficiently pled an unlawful and improper governmental purpose for the UDO. Accordingly, as the first prong of *Poor Richard's* test for a colorable constitutional claim under Article I, sections 1 and 19 is met, we do not reach the second question of whether the means chosen to affect that purpose are reasonable. Rather, we reverse the trial court's order dismissing Plaintiffs' claims under the Fruits of Their Own Labor clause and the Law of the Land clause.

**H. *Ultra Vires* Claim**

Plaintiffs again contend the trial court erred in applying the "reasonably conceivably rational basis test" to their claim that the UDO's permitting fee is unreasonable and *ultra vires*. We agree.

Section 160A-4 of the North Carolina General Statutes provides that "[i]t is the policy of the General Assembly that the cities of this State should have adequate authority to execute the powers, duties, privileges, and immunities conferred upon them by law." N.C. Gen. Stat. § 160A-4 (2023). To that end, "the provisions of [Chapter 160A] and of city charters shall be broadly construed and grants of power shall be construed to include any additional and supplementary powers that are reasonably necessary or expedient to carry them into execution and effect[.]" *Id.* However, this grant of power is not without limits. In *Homebuilders Association of Charlotte, Inc. v. City of Charlotte*, our Supreme Court held that when a city has the authority to assess fees for a given purpose, "such fees will not be upheld if they are unreasonable." 336 N.C. at 46, 442 S.E.2d at 51 (citations omitted). There, the Court addressed whether a fee schedule requiring commercial builders in Charlotte to pay for various government services was within the scope of authority granted to municipalities by the General Assembly. *Id.* at 41–42, 442 S.E.2d at 48–49. Concluding Charlotte did have the authority to enforce the fee schedule, the Supreme Court nonetheless provided a second condition to be met prior to upholding a municipalities enforcement of user fees: namely, that the fees be reasonable. *Id.* at 46, 442 S.E.2d at 51 (citing Lawrence, *Local Government Finance in North Carolina,*

§ 311, at 68 (2d ed. 1990) ("Because the purpose of such a fee or charge is to place the cost of regulation on those being regulated, a rough limit to 'reasonableness' is the amount necessary to meet the full cost of the particular regulatory program.")). The Court relied on the trial court's findings of fact in holding Charlotte's user fees to be reasonable. *Id.* at 46–47, 442 S.E.2d at 51–52.

Here, Plaintiffs allege the fees were not set based on the City's actual or reasonably anticipated costs nor that the fees "bear any relationship to the City's actual or reasonably anticipated cost to regulate food trucks." Rather, Plaintiffs contend, the fees were set "based on a comparison to the approximate property tax burdens on some properties where brick-and-mortar restaurants are located[,]" which results in the fee amounts exceeding the actual or reasonably anticipated cost for the City to enforce the UDO regulations. In support of their contentions, Plaintiffs point towards other neighboring municipalities which charge smaller user fees for food truck operators. Moreover, in support of their allegation that the fees are not related to the actual cost of regulation, Plaintiffs explain that "[a]lmost all regulatory oversight of food trucks is conducted by other governmental groups." These allegations are sufficient to survive a Rule 12(b)(6) dismissal when making a claim asserting municipalities' user fees are unreasonable and *ultra vires*.

As the trial court dismissed Plaintiffs' claim on a Rule 12(b)(6) motion, neither

party presented evidence as to how the fees were calculated, collected, or used[1]. Without this information, neither we nor the trial court may say whether the fees were rational or reasonable in this instance. This is not to say that a claim challenging a municipality's user fees will never be subject to a Rule 12(b)(6) dismissal. Rather, here, evidence relating to the fees will be necessary to make a determination of whether they are unreasonable and thus *ultra vires*.

Accordingly, we hold the trial court erred by dismissing Plaintiffs' claims because it could "envision a number of reasonably conceivably rational bases to support the challenged provisions of the UDO[,]" without analyzing whether Plaintiffs' complaint contained facts sufficient to support their allegation that the user fees were reasonable or related to the City's regulation enforcement cost.

### III.    Conclusion

While cognizant that the UDO enjoys a presumption of validity, we nonetheless hold the trial court erred by applying an erroneous blanket-test to Plaintiffs' claims. As a result of this error, we reverse the trial court's order granting Defendants' motion for summary judgment. Moreover, as Plaintiffs pled facts sufficient to survive 12(b)(6), we remand for further proceedings.

---

[1] We note that the City's Director of Planning and Inspections, Ryan King, submitted an affidavit to the court containing some of this information. The court, however, only considered the affidavit for the sole purpose of determining whether it had jurisdiction to hear Plaintiffs' claims. *See Marlow v. TCS Designs, Inc.*, 288 N.C. App. 567, 572, 887 S.E.2d 448, 453–54 (2023) ("The trial court 'need not confine its evaluation of a Rule 12(b)(1) motion to the face of the pleadings, but may review or accept any evidence, such as affidavits, or it may hold an evidentiary hearing.'" (quoting *Harris v. Pembar*, 84 N.C. App. 666, 667, 353 S.E.2d 673, 675 (1987)).

REVERSED AND REMANDED.

Judges TYSON and COLLINS concur.