This was an action to recover $27.50 alleged to be due plaintiff by reason of a sale or assignment to him of the wages of one of defendant's employees.
The action was instituted in the court of a justice of the peace, and upon appeal to the Superior Court was heard upon an agreed statement of facts. From this it appears that one of defendant's employees executed a power of attorney to one Rickman to sell his wages due and to become due in the sum of $27.50; that under this authority plaintiff purchased the employee's wages in that sum which was paid to the employee less a commission of $2.50; that upon presentation of notice of assignment, with copy of the power of attorney, the defendant refused to pay plaintiff, on the ground that the assignment was for wages unearned at the time of the assignment, and that the assignment not having been accepted by him he was not liable therefor, under the provisions of ch. 410, Public Laws 1935, as amended. The plaintiff contended that this statute was unconstitutional and was not available as a defense. It was conceded that if this Act is valid plaintiff's action against the defendant could not be maintained.
Upon the facts agreed the court rendered judgment for the defendant, holding that the Act in question was a valid exercise of legislative power. Plaintiff appealed.
The plaintiff's appeal presents the question of the constitutionality of chapter 410, Public Laws 1935, as amended, which we quote as follows:
"No employer of labor shall be responsible for any assignment of wages to be earned in the future, executed by an employee, unless and until such assignment of wages is accepted by the employer in a written agreement to pay same."
The right of an assignee to sue in his own name upon an assignment of wages already earned by the employee and due by the employer was upheld inRickman v. Holshouser, 217 N.C. 377, 8 S.E.2d 199. In that case the question of the effect of an assignment of wages to be earned in the future, under the statute quoted, was not presented or considered. In the case at bar the defendant refused to pay to the plaintiff the amount of wages assigned upon the ground that the wages had not been earned at the time of the assignment, and that the assignment had not been accepted by him. He staked his defense upon the *Page 295 
express provisions of the quoted statute. The plaintiff's admission that the assignment covered wages to be earned in the future, and that it had not been accepted by the defendant employer, would relieve the defendant of responsibility therefor, unless the Act can be overthrown because of conflict with some provision of the State or Federal Constitution.
It is fundamental that the power of the General Assembly is limited only by the restraints imposed upon it by the Constitution of North Carolina or by the Constitution of the United States, and when it undertakes to exercise its power in the enactment of a statute, the validity of which is attacked, the courts will not adjudge the statute void on the ground that it is violative of a constitutional limitation unless it so appears beyond a reasonable doubt. "If there is any reasonable doubt as to the validity of the statute, such doubt will be resolved in favor of the validity of the statute." S. v. Brockwell, 209 N.C. 209, 183 S.E. 378. In the language of Justice Holmes in Tyson v. Benton, 273 U.S. at page 446, "I think the proper course is to recognize that a state legislature can do whatever it sees fit to do unless it is restrained by some express prohibition in the Constitution of the United States or of the state."
The plaintiff challenges the validity of the statute in question upon the ground that it has the effect of depriving him of a property right without due process of law in violation of the constitutional guaranties contained in the Fifth and Fourteenth Amendments to the Constitution of the United States, and that for the same reason the statute offends Art. I, sec. 17, of the Constitution of North Carolina. His contention is that his liberty of contract is so restricted by the statute as to constitute a deprivation of a constitutional right, in that he is not permitted to contract for the purchase of the assignment of an employee's wages to be earned in the future, enforceable against the employer, unless he secures the written acceptance of the employer and his agreement to pay therefor.
The privilege of contracting is both a liberty and a property right.Furniture Co. v. Armour, 345 Ill. 160. The right to contract is recognized as being within the protection of the Fifth and Fourteenth Amendments to the Constitution of the United States, Bayside Fish Flour Co. v. Gentry,297 U.S. 422, 147 Cal. 649; West Coast Hotel Co. v. Parrish, 300 U.S. 379; Highland v. Russell Car Snow Plow Co., 279 U.S. 253; 11 Am. Jur., 1154, 1156; and protected by state constitutions.McGuire v. Railway, 131 Iowa 340. "It has been held that the right to make contracts is embraced in the conception of liberty as guaranteed by the Constitution." Chicago B. Q. R. Co. v. McGuire,219 U.S. 549. "Included in the right of personal liberty and the right of *Page 296 
private property — partaking of the nature of each — is the right to make contracts for the acquisition of property." Coppage v.Kansas, 236 U.S. 1. "The freedom of the right to contract has been universally considered as guaranteed to every citizen." Stephens v. Hicks,156 N.C. 239, 72 S.E. 313.
But freedom of contract is a qualified and not an absolute right. The guaranty of liberty does not withdraw the right of legislative supervision, or deny the power to provide restrictive safeguards and reasonable regulations. Chicago B. Q. R. Co. v. McGuire, supra. Liberty of contract is not violated by legislation, operating as a deterrent, which restricts dealings which may become the subject of contract. "A statute does not become unconstitutional merely because it has created a condition of affairs which renders the making of a related contract, lawful in itself, ineffective." Bayside Fish Flour Co. v. Gentry, supra.
Undoubtedly the right to make contracts is subject to the power of the Legislature to impose restrictive regulations for the general welfare in matters affected with a public interest, and to prevent practices in business which are deemed harmful. Generally, the right to contract may be regulated as to form, evidence, and validity as to third persons. ChicagoB. Q. R. Co. v. McGuire, supra. In Alaska Packers Asso. v. IndustrialCom., 294 U.S. 532, it was said: "Legislation otherwise within the scope of acknowledged state power, not unreasonably or arbitrarily exercised, cannot be condemned because it curtails the power of the individual to contract."
The legislative power to impose reasonable restrictions upon the right of contract, deemed conducive to the public good, particularly as to contracts growing out of the relationship of employer and employee, has been upheld by the courts in numerous cases. West Coast Hotel Co. v.Parrish, 300 U.S. 377 (minimum wages for women); U.S. v. Darby LumberCo., 85 Law. Ed. (Adv.), 395 (Fair Labor Standards Act); Patterson v. TheEudora, 190 U.S. 169 (forbidding payment of seamen's wages in advance);N. Y. Central R. Co. v. White, 243 U.S. 188 (Workman's Compensation Laws); Virginian Ry. Co. v. System Federation, 300 U.S. 515 (Railway Labor Act); Knoxville Iron Co. v. Harbison, 183 U.S. 13 (requiring redemption in cash of store orders issued in payment for services); McLeanv. Arkansas, 211 U.S. 539 (regulating the basis of payment to coal miners). Legislative acts regulating contracts of insurance (Midkiff v.Ins. Co., 197 N.C. 139, 147 S.E. 812), and trade dealings under the North Carolina Fair Trade Act (Lilly Co. v. Saunders, 216 N.C. 163,4 S.E.2d 528), were held by this Court not to violate constitutional guaranties.
In many states statutes have been enacted imposing conditions upon the validity of assignments of wages to be earned in the future. These *Page 297 
statutes have been generally upheld as a valid exercise of the police power of the State. 5 C. J., 870; 6 C. J. S., 1067; 4 Am. Jur., 262; 37 A.L.R., 872 (Annotation); McCallum v. Simplex Elec. Co., 197 Mass. 388;Hellar v.Lutz, 254 Mo., 704; Fay v. Bankers' Surety Co., 125 Minn. 211; Thompson v.Erie R. Co., 207 N.Y. 171; West v. Jefferson Mills Co.,147 Tenn. 100;Wright v. Balt. Ohio R. Co., 146 Md. 66; Cleveland C. C. St. R. Co. v.Marshall, 182 Ind. 280; National Finance Co. v. Citizens Loan SavingsCo., 184 Ga. 619.
The particular question, here presented, of the power of the Legislature to impose restrictions upon the assignment of unearned wages was considered by the Supreme Court of the United States in Mutual Loan Co. v. Martell,222 U.S. 225, where a Massachusetts statute was upheld. It was there decided that restrictions similar to those in the North Carolina statute, rendering the assignment invalid unless accepted in writing by the employer, did not deprive the assignee of due process of law or the equal protection of the laws. This was based upon the broad governmental power of the state. The Court said: "In a sense, the police power is but another name for the power of government; and a contention that a particular exercise of it offends the due process clause of the Constitution is apt to be very intangible to a precise consideration and answer. Certain general principles, however, must be taken for granted. It is certainly the province of the state, by its legislature, to adopt such policy as to it seems best. There are constitutional limitations, of course, but these allow a very comprehensive range of judgment. And within that range the Massachusetts statute can be justified. . . . But if we consider the Massachusetts statute strictly as a limitation upon the power of contract, it still must be held valid." In Bacon v. Walker, 204 U.S. 311, it was said that the police power was not confined to the suppression of what is disorderly or insanitary, but "extends to so dealing with the conditions which exist in the state as to bring out of them the greatest welfare of the people."
That the statute inferentially permits the employer to signify his agreement to pay the wages to the assignee of his employee, if he chooses to do so, does not of itself constitute such a discrimination as would invalidate the Act, for unless restrained by some legislative prohibition one engaged in private business may exercise his own pleasure as to the parties with whom he will deal. Green v. Victor Talking Machine Co.,24 F.2d 378; Fed. Trade Com. v. Raymond Bros.-Clarke Co., 263 U.S. 565;McNeill v. Hall, ante, 73, 16 S.E.2d 456. Nor does the statute tend to impair the obligation of a contract. Bateman v. Sterrett, 201 N.C. 59,159 S.E. 14; Nash v. Comrs. of St. Pauls, 211 N.C. 301, 190 S.E. 475. *Page 298 
Statutes enacted for the purpose of imposing wholesome and reasonable regulations upon the relationship of employer and employee, and to prevent practices deemed injurious to those engaged in labor and its employment, are generally held to be with the police power of the State. S. v.Lawrence, 213 N.C. 674, 197 S.E. 586; McGuire v. Railway, 131 Iowa 340. Obviously the statute we are now considering was enacted to restrict, as having harmful tendencies, the sale or assignment, for a substantial commission, of wages to be earned in the future. The end in view, we may assume, was not only to relieve the employer of unnecessary responsibility, but also to restrain the activities of those who, like the plaintiff, were engaged in the business of buying at a discount the unearned wages of employees.
For the reasons stated, we conclude that ch. 410, Public Laws 1935, as amended, does not contravene any constitutional inhibition, and that it was a valid exercise of legislative power. As the case was made to turn upon the validity of the statute, it follows that the judgment of the Superior Court must be
Affirmed.