IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 24-559

Filed 16 April 2025

Wake County, No. 20CVS010914-910

TIM OATES, Plaintiff,

v.

PHILIP E. BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate; TIMOTHY K. MOORE, in his official capacity as Speaker of the House of Representatives; CAMERON INGRAM, in his official capacity as Executive Director of the North Carolina Wildlife Resources Commission; THE NORTH CAROLINA WILDLIFE RESOURCES COMMISSION; and THE STATE OF NORTH CAROLINA, Defendants.

Appeal by plaintiff from order and judgment entered 12 February 2024 by a panel consisting of Judges Daniel A. Kuehnert, Rebecca W. Holt, and Richard K. Harrell in Superior Court, Wake County. Heard in the Court of Appeals 29 January 2025.

*Center for Constitutional Rights & Free Trade, by Scott Maitland, for plaintiff.*

*Attorney General Jeff Jackson, by Deputy Solicitor General Nicholas S. Brod, Solicitor General Ryan Y. Park, Special Deputy Attorney General Olga Vysotskaya de Brito, Solicitor General Fellow Kaeli Czosek, and Assistant Attorney General Benjamin T. Spangler, for defendants.*

ARROWOOD, Judge.

Tim Oates ("plaintiff") appeals from an order granting summary judgment in favor of Philip Berger, et al. ("defendants"), on plaintiff's facial challenge to the

constitutionality of the Sunday hunting laws of N.C.G.S. § 103-2. For the following

reasons, we affirm the lower court's decision.

## I.     Background

On 25 July 2017, Governor Roy Cooper signed House Bill 559 into law,

amending the Sunday hunting laws of North Carolina which up to that point had

prohibited all firearm hunting on Sundays, punishable as a Class 3 misdemeanor.

2017 H.B. 559, S.L. 2017-182. The amended law included the following prohibitions

in pertinent part:

> (a) Any landowner or member of the landowner's family, or
> any person with written permission from the landowner,
> may, subject to rules established by the Wildlife Resources
> Commission, hunt wild animals and upland game birds
> with the use of firearms on Sunday on the landowner's
> property, except that all of the following limitations apply:
> (1) Hunting on Sunday between 9:30 A.M. and 12:30 P.M.
> is prohibited, except on controlled hunting preserves
> licensed pursuant to G.S. 113-273(g).
> . . .
> (3) The use of a firearm to take deer that are run or chased
> by dogs on Sunday is prohibited.
> (4) Hunting on Sunday within 500 yards of a place of
> religious worship, as defined by G.S. 14-54.1(b), or any
> accessory structure thereof, is prohibited.
> . . .
> (a1) Any person may . . . hunt wild animals and upland
> game birds with the use of firearms on Sunday on public
> lands of the State managed for hunting, except that the
> following limitations apply:
> (1) Hunting on Sunday between 9:30 A.M. and 12:30 P.M.
> is prohibited.
> (2) The use of a firearm to take deer that are run or chased
> by dogs on Sunday is prohibited.

(3) Hunting on Sunday within 500 yards of a place of religious worship, as defined by G.S. 14-54.1(b), or any accessory structure thereof, is prohibited.
. . .
(a2) The hunting of migratory birds on Sunday is prohibited unless authorized by proclamation or rules of the Wildlife Resources Commission, subject to the following limitations:
(1) Hunting on Sunday between 9:30 A.M. and 12:30 P.M. is prohibited, except on controlled hunting preserves licensed pursuant to G.S. 113-273(g).
(2) Hunting on Sunday within 500 yards of a place of religious worship, as defined by G.S. 14-54.1(b), or any accessory structure thereof, is prohibited.
. . .

*Id.* These Sunday hunting laws are codified as N.C.G.S. § 103-2. During the same legislative session, an amendment to the North Carolina Constitution protecting the right to hunt and fish was filed in the Senate, which was ultimately ratified on 25 June 2018. 2018 S.B. 677. This amendment reads as follows:

The right of the people to hunt, fish, and harvest wildlife is a valued part of the State's heritage and shall be forever preserved for the public good. The people have a right, including the right to use traditional methods, to hunt, fish, and harvest wildlife, subject only to laws enacted by the General Assembly and rules adopted pursuant to authority granted by the General Assembly to (i) promote wildlife conservation and management and (ii) preserve the future of hunting and fishing. Public hunting and fishing shall be a preferred means of managing and controlling wildlife. Nothing herein shall be construed to modify any provision of law relating to trespass, property rights, or eminent domain.

N.C. Const. Art. I § 38.

- 3 -

On 25 September 2020, plaintiff filed a complaint against Attorney General Josh Stein in Wake County stating three causes of action: (1) that N.C.G.S. § 103-2(a2), which prohibits Sunday waterfowl hunting, impermissibly interferes with the fundamental rights of hunting and pursuit of happiness guaranteed by the North Carolina Constitution; (2) that N.C.G.S. § 103-2(a1), which limits hunting hours on Sunday, is likewise unconstitutional; and (3) that all restrictions on Sunday hunting are not allowed under the federal Establishment Clause. Attorney General Stein filed a motion to dismiss on 23 October 2020, arguing that he was not a proper party to the action and that plaintiff lacked standing to sue him. On 2 December 2020, plaintiff filed an amended complaint against present defendants. In the amended complaint, plaintiff argued that restrictions on the right to hunt migratory birds on Sunday, all restrictions on hunting on public grounds on Sundays, and time bound hunting restrictions "interfere[] with a multitude of rights granted by the state constitution . . . ."

Defendants subsequently filed a motion to dismiss the amended complaint pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) as to Cameron Ingram, the North Carolina Wildlife Resources Commission, and the State of North Carolina, arguing that plaintiff had failed to plead sufficient facts to state claims upon which relief could be granted. Plaintiff filed a motion for summary judgment on 13 January 2021. An additional motion to dismiss as to defendants Philip E. Berger and Timothy K. Moore

was filed on 17 June 2021, stating in part that plaintiff had not pled sufficient facts to support his as-applied challenge.

The amended complaint and motions to dismiss were heard in Wake County Superior Court on 14 September 2021. In a 19 January 2022 order, Judge Keith Gregory recognized that plaintiff had dismissed his as-applied challenges with prejudice, and transferred the facial challenges to a three-judge panel.

On 12 February 2024, a panel consisting of Judges Daniel Kuehnert, Rebecca Holt, and Richard Harrell, entered an order granting summary judgment in favor of defendants. In addressing Count 1, plaintiff's challenge to the restriction on migratory bird hunting on Sundays, the panel applied rational basis review, finding that plaintiff could not meet his burden on the facial challenge "because the statute is reasonably and rationally related to the legitimate government interest contemplated in the text of the amendment under which Plaintiff brings his challenge." The court noted that strict scrutiny was "chiefly inappropriate," given that the Article contained "express language that limits the right to hunt by vesting in the State a right and a duty to manage wildlife." The panel further noted that there were additional State obligations to protect the lands and waters to the benefit of both hunters and non-hunters, and discussed "several conceivable reasons to restrict hunting" on Sundays: protecting migratory birds; enabling non-hunters to enjoy scenic game lands without disturbance; and allowing an extended hunting season through compensatory hunting days.

In addressing Count 2, plaintiff's contention that any and all restrictions on hunting on public lands are unconstitutional, the panel noted its analysis of Count 1 and cited Article XIV of the North Carolina Constitution: "the State is required 'to conserve and protect its lands and waters for the benefit of *all* its citizenry . . . .'" The court further noted that the Equal Protection Clause does not apply to different types of land.

Regarding Count 3, plaintiff's challenge to the ban on hunting on public or private land between 9:30 a.m. and 12:30 p.m. on Sundays, the panel found that the General Assembly had authority to exercise the police power of the State to protect the people's welfare, and that an ordinance which "may require the cessation of secular pursuits on Sunday during the hours in which churchgoing people usually attend religious services, will not be held unconstitutional, if otherwise reasonable and valid[,]" quoting *State v. McGee*, 237 N.C. 633, 644 (1953). The panel determined that this law was "a valid exercise of the State's police power," given the benefit to non-hunters, who will have a guaranteed window of time during which they will not be disturbed by hunting, and the extended hunting season in North Carolina.

Upon finding that there was "no genuine issue of material fact" and that plaintiff had failed to satisfy the burden of proof as to facial unconstitutionality, the panel granted summary judgment in favor of defendants. Plaintiff filed notice of appeal on 10 March 2024.

II.     <u>Discussion</u>

Plaintiff raises three issues on appeal. First, plaintiff argues that the panel applied the incorrect standard of review; second, that the panel's interpretation of Article I, Section 38 as a grant of power to the general assembly was incorrect; and third, that the correct application of any level of scrutiny to the hunting law would show it to be unconstitutional. We address each of plaintiff's arguments in turn.

A.     Standard and Scope of Review

We review an appeal from an order granting summary judgment *de novo*. *Stevens v. Heller*, 268 N.C. App. 654, 658 (2019). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33 (2008) (interior quotations and citation removed).

A party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56 (2024). "The purpose of summary judgment is to eliminate formal trial when the only questions involved are questions of law." *Ellis v. Williams*, 319 N.C. 413, 415 (1987) (citations omitted).

Reviewing plaintiff's appeal requires an additional level of analysis, that of the constitutionality of the law itself, which we also review *de novo*. *See State v. Grady*, 372 N.C. 509, 521 (2019). Here, plaintiff engages in a facial challenge to the statute,

rather than a challenge to the statute as applied to himself in particular. To succeed in this challenge, plaintiff bears a heavy burden, as he must not rely on speculation, but rather "establish that no set of circumstances exists under which the act would be valid." *Holmes v. Moore*, 384 N.C. 426, 436 (2023) (interior quotations and citation omitted). We presume that laws passed by the General Assembly are constitutional, and will not make a finding of unconstitutionality unless convinced beyond a reasonable doubt. *Grady*, 372 N.C. at 521–22. A "constitutional violation must be plain and clear," and in deciding such, "we look to the text of the constitution, the historical context in which the people of North Carolina adopted the constitutional provision at issue, and our precedents." *N.C. State Bd. of Educ. v. State*, 371 N.C. 149, 157 (2018) (citations omitted).

### B.    Appropriate Level of Scrutiny

Laws passed by the General Assembly implicate different types of rights, and the type of right implicated will determine how closely we examine the purpose and effect of the law. Where a right "is constitutionally fundamental, then the court must apply a strict scrutiny analysis wherein the party seeking to apply the law must demonstrate that it serves a compelling state interest." *Affordable Care, Inc. v. N.C. State Bd. of Dental Exam'rs*, 153 N.C. App. 527, 535–36 (20020) (citation omitted). However, where the right is not fundamental, "the party seeking to apply it need only meet the traditional test of establishing that the law is rationally related to a legitimate state interest." *Id.* at 536.

We have previously held that "[f]undamental rights include those either explicitly or implicitly guaranteed by the state or federal constitution . . . ." *Rhyne v. K-Mart Corp.*, 149 N.C. App. 672, 694 (2002). Very few rights are recognized as fundamental under the federal Constitution; these include the right to marry, have children, and enjoy marital privacy. *Standley v. Town of Woodfin*, 362 N.C. 328, 332 (2008) (citations omitted). Fundamental rights under the North Carolina Constitution appear in a variety of cases; our courts have, at various times, recognized fundamental rights to just compensation, *Dept. of Transp. v. Rowe*, 353 N.C. 671, 676 (2001), opportunity for a basic education, *Hoke Cnty. Bd. of Educ. v. State*, 382 N.C. 386, 435–36 (2022), and a one-person one-vote standard, *Blankenship v. Bartlett*, 363 N.C. 518, 522 (2009).

Plaintiff argues that the right to hunt is a fundamental right, and thus deserving of strict scrutiny. However, while the right to hunt has been made explicit in our Constitution, this does not mean that it is a fundamental right for several reasons, chief among them being the reservation of power to the General Assembly contained within the constitutional amendment.

In *Blankenship v. Barlett,* our Supreme Court addressed the question of whether a right written into the constitution is a fundamental right. There, the court held that even though the State was "under no mandate to give its citizens the right to vote for superior court judges, once it has done so in its constitution, that provision must be construed in conjunction with the Equal Protection Clause to prevent

internal conflict." *Blankenship*, 363 N.C. at 525. This right, the Court held, "is literally enshrined in the North Carolina Constitution and, as such, is distinguishable from other citizenship privileges that receive rational basis review." *Id.* at 526. However, despite this "literal enshrinement", the Court did not find that strict scrutiny was appropriate, since judicial elections have "a separate component that is ordinarily the province of the legislature . . . ." *Id.* at 523–24. Thus, despite "literal enshrinement," the right to vote in judicial elections also occupied the province of the legislature, which prevented the court from applying rational basis review.

Even further distinguishing the right in the case *sub judice* from a fundamental right, and also distinguishing it from the right in *Blankenship*, is the grant of power to the General Assembly written into the amendment. Our Supreme Court has previously ruled on the appropriate standard of review when a right is subject to the power of the General Assembly. The Court found that the right of contract is "qualified" and that the "guaranty of liberty does not withdraw the right of legislative supervision . . . ." *Morris v. Holshouser*, 220 N.C. 293, 296 (1941). Where the legislature has power over a right, this court will not overturn a law curtailing that right unless it was unreasonable or arbitrary. *See id.* (quoting *Alaska Packers Ass'n v. Indus. Comm.*, 55 S. Ct. 518, 522 (1935)). Thus, although the right to hunt was written into our Constitution, the amendment has all the hallmarks that indicate laws passed under the amendment deserve only rational basis review.

Plaintiff takes issue with interpretation of the phrase "subject only to laws enacted by the General Assembly" contained within the constitutional amendment. He argues that this phrase was misinterpreted by the superior court panel, and that it acts as a *limit on*, rather than a grant of, power to the General Assembly, the latter being our contention here. Plaintiff's argument centers on his interpretation of our reasoning in *Coastal Conservation Ass'n v. State*, 285 N.C. App. 267 (2022), upon which the superior court panel relied in making its determination.

The central dispute of *Coastal Conservation Ass'n* was the allegation that the State had breached, *inter alia*, Article I, Section 38 of the North Carolina Constitution by "permitting for-profit harvesting of finfish or shellfish in quantities or through methods that cause overexploitation or undue wastage to North Carolina's coastal fisheries resources." *Id.* at 269. We held that this amendment was created to protect the right to fish against encroachment, and that the State had an affirmative duty pursuant to the amendment "to preserve the right of the people to fish and harvest fish." *Id.* at 282. This included the duty to preserve fisheries. *Id.* at 283.

Plaintiff argues that rational basis review is inappropriate in light of this holding, since it would "allow almost any encroachment of these rights no matter how tenuously related they are to actual wildlife management." He contends that the Sunday hunting laws "have nothing to do with managing wildlife and everything to do with managing people." We disagree with plaintiff's position for a number of reasons: the historical record surrounding the Sunday hunting laws and the

enactment of this amendment indicate that these were decided in tandem, and the state Constitution already demands that state land be used for the benefit of all.

The scope of our historical review can be expansive: we interpret the law "in accordance with the intent of its framers and the citizens who adopted it. Inquiry must be had into the history of the questioned provision and its antecedents, the conditions that existed prior to its enactment, and the purposes sought to be accomplished by its promulgation." *Sneed v. Greensboro City Bd. of Educ.*, 299 N.C. 609, 613 (1980). Our review here reveals that the amendment and updates to the Sunday hunting laws were made almost in tandem. North Carolina House Bill 559 was passed as part of the 2017–18 legislative session, first filed 4 April 2017, and ratified on 30 June 2017. 2017 H.B. 559. At the same time that these changes to the Sunday hunting laws were under consideration in the House, the Senate introduced the hunting and fishing amendment on 6 June 2017, which was ratified a year later. 2017 S.B. 677. Both of the bills passed with significant margins. It is clear from the historical record, then, that our legislature saw no conflict between the amendment and what was left of the Sunday hunting laws, as they chose to pass the amendment and keep the laws in a limited form, rather than entirely discard Sunday hunting laws.

Finally, we note that "a constitution cannot be in violation of itself," and thus we read each provision of our Constitution in *pari materia*. *Stephenson v. Bartlett*, 355 N.C. 354, 378 (2002) (citations omitted). Article XIV, Section 5 of our State

Constitution reads, in pertinent part: "It shall be the policy of this State to conserve and protect its lands and waters for the benefit of *all its citizenry . . . .*" N.C. Const. Art. XIV, § 5 (emphasis added).

Given, then, that the power of the General Assembly to pass laws concerning hunting was written into the amendment, that the laws were changed and the amendment introduced in the same session of the General Assembly and ratified with wide margins, the fact that our Constitution requires the protection of land for all the citizens of North Carolina, we hold that the Sunday hunting laws must be reviewed under the rational basis test.

### C.     Rational Basis Review of Sunday Hunting Laws

Reviewing, then, the Sunday hunting laws for a rational basis, we find that they are valid under the North Carolina Constitution. "The 'rational basis' standard merely requires that the governmental classification bear some rational relationship to a conceivable legitimate interest of government." *White v. Pate*, 308 N.C. 759, 766–67 (1983). Laws reviewed under rational basis are presumed valid. *Id.* at 767.

There are numerous rational bases on which these hunting laws rest. By restricting hunting on Sundays, North Carolina receives compensatory hunting days under U.S. Fish and Wildlife regulations, extending the hunting season while receiving the same number of hunting days. Letter from U.S. Fish and Wildlife Serv. to N.C. Wildlife Res. Comm'n (Nov. 3, 2023) (on file in record). By limiting the hours on which hunting can occur, the law provides opportunities for non-hunters to enjoy

North Carolina game lands and provides residents and churchgoers with an assured respite on Sunday mornings. The law also ensures that migratory bird populations will be preserved by preventing their hunting on Sundays.

Plaintiff challenges this last basis, protecting bird populations, by pointing to a study on the impact of Sunday hunting on migratory birds conducted by the North Carolina Wildlife Resources Commission and presented to the North Carolina General Assembly on 1 March 2018. N.C. WILDLIFE RESOURCES COMM'N, *Final Report to the North Carolina General Assembly on the Biological, Resource Management, Sociological and Economic Impacts of Allowing Sunday Hunting of Migratory Birds in North Carolina* (2018). Plaintiff notes that the study concluded that "Sunday hunting of waterfowl has NO NEGATIVE (*sic*) impact on conservation, management or preservation, it also has POSITIVE (*sic*) social economic impacts."[1] However, plaintiff misstates the strength with which the Commission provided its advice. The Commission offered the advice that "[w]hile there is no evidence that Sunday hunting would have any negative biological impact on migratory bird populations, empirical data to accurately predict impacts do not currently exist nor are they likely to exist in the future." *Final Report* at 4. The General Assembly, therefore, was entitled to make a reasoned decision based on the lack of conclusive

---

[1] The Commission's letter notes that migratory birds include waterfowl. *Final Report* at 2.

evidence and thereby decided to preserve the law prohibiting the hunting of migratory birds on Sunday.

## III.    Conclusion

For the foregoing reasons, we affirm the decision of the Superior Court panel.

AFFIRMED.

Judges GORE and MURRY concur.